[Crim. No. 1058. Fifth Dist. Feb. 1, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
JULIA ANN MAYFIELD, Defendant and Appellant.

COUNSEL

Jin Ishikawa, under appointment by the Court of Appeal, for Defendant and Appeallant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Nelson P. Kempsky, O. Robert Simons and Eddie T. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STONE, P. J.**—This appeal is from a judgment entered following a jury verdict finding defendant guilty of violation of section 11912 of the Health and Safety Code, sale of restricted dangerous drugs and count II, violation of section 11531 of the Health and Safety Code, sale of marijuana.

The most vexing problems in the case arise because Deputy Sheriff David Martinez died after testifying at the preliminary hearing and before the trial in the superior court. Martinez had been employed by the sheriff's office as a narcotics undercover operator from February 5, 1970, until February 25, 1970, at which time he was hired as a Kern County deputy sheriff. At a preliminary hearing held June 17, 1970, Martinez testified that on March 11, 1970, while at the Plush Cat Bar on Baker Street in Bakersfield, he asked defendant if she knew where he could "score some reds." She told Martinez to follow her toward a public telephone and there she handed him three "racks" or packets, which it later developed were seconal capsules, and Martinez gave her $3 in county funds. A short time thereafter Martinez telephoned his superior, Detective Gutierrez of the Kern County sheriff's office, and informed him of the sale. Later that evening he delivered the capsules to Gutierrez.

Martinez testified, also, that on May 15, 1970, he contacted defendant at the International Cafe on Baker Street, and asked her if she had any "reds and weed." She told him she had some weed she would sell to him. She went into the restroom, returned in a short time and handed him three lids of material, that proved to be marijuana. Martinez gave her $30 in county funds. He followed the same procedure as after the prior purchase, calling Detective Gutierrez and advising him of the purchase, and later delivering the contraband to him.

During cross-examination by defense counsel at the preliminary hearing, Martinez testified that prior to March 11, 1970, when he made the first buy, he had seen defendant on several occasions at a residence where he believed she lived, at 630 Casa Loma Avenue in Bakersfield.

At the trial, defendant testified in her own behalf and denied she had ever seen David Martinez prior to the preliminary hearing. Her principal defense was the alibi that she was not at either place where the transactions were alleged to have occurred on March 11, 1970, and May 15, 1970. She testified in some detail as to where she was on each occasion and what she was doing. This evidence was corroborated to some extent by witnesses testifying on her behalf; however, substantiality of the evidence is not an issue here because this appeal is grounded principally upon three points of law.

■ The first question relates to the admissibility of hearsay identification evidence. Officer Gutierrez testified that following a telephone call from Martinez after the first sale on March 11, he removed a photograph of defendant from official files in the sheriff's office and went to rendezvous with Martinez. They met at a motel room and Gutierrez showed him the photograph. The prosecuting attorney asked: "Did he identify that photograph in your presence?" Defense counsel interposed an objection on the ground the answer to the prosecutor's question was hearsay. In overruling the objection, the court observed: ". . . a statement made like that can be an exception to the hearsay rule, like what did he do and what did he say. He may have just pointed. He has a right to introduce some testimony as to what he said about identifying the picture." The prosecuting attorney then phrased the question thus: "Did he identify the photograph," and the witness answered, "Yes, sir, he did."

The court's ruling can be construed to mean only that actions are to be distinguished from verbal hearsay or, more specifically, that actions or physical manifestations are an exception to the hearsay rule. Evidence Code section 1200 states the hearsay rule thus: "(a) 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated.

"(b) Except as provided by law, hearsay evidence is inadmissible."

Section 1200 would appear, at first blush, to support the ruling of the trial judge in that it refers to hearsay evidence as "a statement." Any uncertainty is clarified, however, by Evidence Code section 225, defining the word "statement," as follows: " 'Statement' means (a) oral or written verbal expression or (b) nonverbal conduct of a person intended by him as a substitute for oral or written verbal expression."

The question as finally posed by the district attorney adduced an answer that did not reflect whether it was based upon verbal hearsay or some act of Martinez, but the distinction is unimportant for had Martinez identified defendant by merely pointing at the photograph the extrajudicial identification would have been within the hearsay proscription.

Plaintiff argues that hearsay identification evidence is admissible under the holding of the Supreme Court in *People* v. *Gould,* 54 Cal.2d 621 [7 Cal.Rptr. 273, 354 P.2d 865], that: "Evidence of an extrajudicial identification is admissible, not only to corroborate an identification made at the trial [citation], but as independent evidence of identity." (P. 626.)

But in *Gould* the hearsay declarant was before the court; the opinion

recites at page 626 that "the principal danger of admitting hearsay evidence is not present since the witness is available at the trial for cross-examination." Thus it is evident the court did not intend to make an unqualified ruling, as would appear when the language is taken out of context. Here, the declarant's death before trial eliminated the safeguard of cross-examination.

Plaintiff argues the hearsay identification evidence was admissible for another reason, namely, that Evidence Code section 1238 provides: "Evidence of a statement previously made by a witness is not made inadmissible by the hearsay rule if the statement would have been admissible if made by him while testifying and:

"(a) The statement is an identification of a party or another as a person who participated in a crime or other occurrence;

"(b) The statement was made at a time when the crime or other occurrence was fresh in the witness' memory; and

"(c) The evidence of the statement is offered after the witness testifies that he made the identification and that it was a true reflection of his opinion at that time."

It is apparent from the language of subdivision (c) of section 1238 that the evidence, here, was not admissible as an exception to the hearsay rule because Martinez, the declarant, was not present to testify, and at the preliminary hearing he did not testify that he made a photographic identification and, a fortiori, did not testify that such identification was a true reflection of his opinion at that time.

The error in permitting Gutierrez to testify as to an extrajudicial identification of defendant by Martinez does not, standing alone, require a reversal of the judgment. The transcript of the preliminary proceeding which was received in evidence leaves no doubt that Martinez identified defendant as the person from whom he made two purchases of contraband, and the identification was independent from the objectionable hearsay photographic identification.

■■ However, Martinez's testimony at the preliminary hearing leads us to another vital point of the appeal. Defense counsel attempted to attack Martinez's credibility by cross-examining Gutierrez about Martinez's conduct as a narcotics undercover agent. In considering defendant's right of cross-examination in this posture, it must be noted that the testimony given by Martinez at the preliminary hearing is the only evidence connecting defendant with the sale of the seconal and marijuana. Gutierrez testified

that he received the contraband from Martinez, but Gutierrez was not present when the alleged sales were made; he was not even in the area. After each transaction was completed, Martinez delivered the item of contraband to Gutierrez at a different location from where the sales were alleged to have taken place.

Martinez was not strip-searched or given marked money prior to making contact with defendant, the usual procedure where an undercover agent prepares to make a "buy." Moreover, there was no surveillance of Martinez; no one testified to having observed him talk to defendant at or about the time the alleged sales were made, and when defendant was arrested no marked money or contraband of any kind was obtained. Thus the entire case rested upon whether the jurors believed Martinez's testimony given at the preliminary hearing.

Defense counsel did not cross-examine Martinez extensively at the preliminary hearing. This is not unusual, as counsel often wait until the trial in chief to disclose their defense, whether by their own witnesses or by cross-examination of the People's witnesses. (See *People* v. *Vinson*, 268 Cal.App.2d 672, 676 [74 Cal.Rptr. 340]; *People* v. *Gibbs*, 255 Cal. App.2d 739, 743-744 [63 Cal.Rptr. 471].) Being unable to attack Martinez's credibility by cross-examination at the trial, counsel's only recourse was to cross-examine his superior, Gutierrez, as to his knowledge of Martinez's conduct. His first question in this line of questioning was whether Gutierrez knew that Martinez had purchased narcotics with the state's money for less than he reported to the law enforcement officers. An objection by the district attorney was sustained. ■ Counsel then made an offer of proof that "Martinez made a disproportionate number of buys of aspirin or other innocuous substances for dangerous drugs . . . he made a purchase of an amount of heroin which would normally sell for $10, paying $50 for it. That he made an alleged purchase of marijuana in bulk that was a large bulky package purporting to be approximately a brick that was leaves and twigs. That many of these facts are peculiarly within the knowledge of Mr. Gutierrez, the officer who was his direct supervisor." ■ The court refused to permit defense counsel to develop this line of evidence and sustained the prosecution's objections under the authority of Evidence Code section 352. The section provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Discretion exercised by the court pursuant to Evidence Code section 352 must be evaluated in the light of the circumstances of the particular

case. As the term "discretion" implies, no inflexible criterion governs its application. There are, however, certain general guidelines contained in section 352. The trial judge observed that the admission of evidence as to other purchases and the prices paid therefor in argument as to Martinez's credibility would "unquestionably be an undue consumption of time." The right of a defendant to attack the credibility of her hearsay accuser is so fundamental that consumption of time is irrelevant where the evidence is not cumulative. The proffered evidence was admissible and it was vital to defendant's case because Martinez, the only percipient witness, had died and his hearsay testimony is the only evidence connecting her with the crimes. Thus to deny defendant the right to adduce pertinent evidence that bears upon the credibility of a witness unseen by the jury and who had not been fully cross-examined at the preliminary hearing was to deny her due process of the law.

The trial court's other reason for excluding the evidence, based upon part (b) of section 352, was that the evidence would "confuse the real issues and result in misleading the jury." It is clear from what we have said that the credibility of Martinez was a real issue and as far as defendant is concerned it was the principal issue in the case. Should it appear to the court that any admissible evidence on this issue might mislead the jury, proper admonition and instructions could be given to clarify the purpose for which such evidence was to be received.

The rationale of *Jennings* v. *Superior Court*, 66 Cal.2d 867 [59 Cal. Rptr. 440, 428 P.2d 304], is applicable to the case at bench. The Supreme Court said, at page 877: " 'While the trial judge has broad discretion to control the ultimate scope of cross-examination designed to test the credibility or recollection of a witness [citation], yet wherever possible that examination "should be given wide latitude, particularly in cases involving 'a witness against a defendant in a criminal prosecution' " [citation].' "

 Moreover, since the acts alleged in the offer of proof to have been perpetrated by Martinez went to his credibility in showing possible bias, interest or motive, as well as to his reliability as a witness, the evidence was admissible under Evidence Code section 780, subdivision (f). Had Martinez lived to testify at the trial, the questions would have been proper cross-examination. They were likewise proper for the purpose of attacking his credibility under Evidence Code section 1202, which provides in pertinent part: "Any other evidence offered to attack or support the credibility of the declarant is admissible if it would have been admissible had the declarant been a witness at the hearing. For the purposes of this

section, the deponent of a deposition taken in the action in which it is offered shall be deemed to be a hearsay declarant."

The imbalance created because the jury had no opportunity to observe the demeanor of the prosecution's chief witness, particularly under cross-examination, was accentuated when the court precluded defendant from exercising the right, under Evidence Code section 1202, to attack the credibility of Martinez.

██ There remains defendant's contention that the court was bound to admonish the jury *sua sponte* as to the limited purpose for which evidence of a prior conviction was admissible. The district attorney asked defendant if she had been convicted of a felony. There was no objection by defense counsel nor request for an admonition as to the limited purpose for which the evidence was admissible. Defendant replied that she had and, upon further inquiry, answered that the felony was manslaughter. She asserts for the first time on appeal that failure of the trial judge to either admonish the jury during trial or instruct at the conclusion of the trial that evidence of the prior conviction of a felony was admissible for the limited purpose of attacking her credibility, requires a reversal.

██ Basically, evidence of other crimes, whether by proof of a prior conviction or otherwise, is not admissible when offered solely to prove criminal disposition or a propensity on the part of the accused to commit the crime charged, because the probative value of such evidence is outweighed by its prejudicial effect. (*People* v. *Peete,* 28 Cal.2d 306, 314-315 [169 P.2d 924]; *People* v. *Westek,* 31 Cal.2d 469, 476 [190 P.2d 9]; *People* v. *Kelley,* 66 Cal.2d 232, 238 [57 Cal.Rptr. 363, 424 P.2d 947].) On the other hand, if the prior criminal act bears upon an essential element of the crime charged, such as identity, motive, intent or modus operandi, the evidence is admissible upon that issue. There is, however, the general exception by statute (Evid. Code, § 788) which permits evidence that a witness has been convicted of a felony "for the purpose of attacking the credibility of a witness." ██ It is to be noted that the very section which makes such evidence admissible confines it to impeachment of the witness' credibility. Thus it is implicit from the wording of the section that the jury shall be admonished as to the limited application they may give such evidence. Here, the jury was never advised as to the limited purpose for which the evidence was presented to them. We conclude that this violated the admonition contained in section 788, that the evidence is admissible for a limited purpose.

Our conclusion that failure to give any admonition at all constitutes error is buttressed by the holding in *People* v. *Beagle* (1972) 6 Cal.3d 441, 452

[99 Cal.Rptr. 313, 492 P.2d 1]. In that case the Supreme Court said: "Section 788 is an exception, indeed the only exception, to the rule that 'evidence of specific instances of his conduct relevant only as tending to prove a trait of his character is inadmissible to attack or support the credibility of a witness.' (Evid. Code, § 787.) In providing this exception the Legislature used the permissive word 'may' rather than a mandatory word such as 'shall.' We conclude that the choice of language leaves the trial court with discretion to exclude proof of prior felony convictions offered in impeachment. . . .

"In *Luck* [*Luck* v. *United States* (1965) 348 F.2d 763 (121 App.D.C. 151)] the court alluded to the general rule that a judge may exclude evidence when its probative value is outweighed by the risk of undue prejudice. (348 F.2d 763, 768-769.) That same rule is codified in our Evidence Code in section 352. This section is one of the 'general provisions' of the Evidence Code (see Evid. Code, div. 3) which apply to evidence admissible under other provisions thereof. We find nothing in the statutory language to exempt section 788 from the general evidentiary provisions applicable to all rules of admissibility, and conclude that when sections 788 and 352 are read together they clearly provide discretion to the trial judge to exclude evidence of prior felony convictions when their probative value on credibility is outweighed by the risk of undue prejudice."

Although we deem it error to fail to admonish or instruct the jury as to the limited purpose for which the evidence of the prior felony conviction was admitted, we do not hold that it was reversible error per se. ■ Since the error is not of constitutional dimensions, the test for determining prejudice is whether our examination of the entire cause, including the evidence, reveals it is reasonably probable that a miscarriage of justice resulted. (Cal. Const., art. VI, § 13; *People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].) ■ We have made that review and in light of cumulative errors heretofore discussed, a reversal of the judgment is impelled. No doubt upon retrial counsel will ask the court to determine whether evidence of the prior conviction of the particular felony here should be admitted in the exercise of the court's discretion (Evid. Code, § 352; *People* v. *Beagle, supra*). If the evidence is admitted, the order admitting it certainly should be accompanied by an admonition or instruction concerning the limited purpose for which such evidence is admitted.

The judgment is reversed.

Gargano, J., and Brown (G. A.), J., concurred.

A petition for a rehearing was denied February 29, 1972, and respondent's petition for a hearing by the Supreme Court was denied March 30, 1972.