[Crim. No. 16381. First Dist., Div. Three. Dec. 15, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
EMMETT LOVE, JR., Defendant and Appellant.

**COUNSEL**

Geoffrey J. Etnire, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Dane R. Gillette, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KING, J.**\*—Appellant, Emmett Love, Jr.; and codefendant Paul A. Fulmer, after a jury trial, were convicted of robbery (Pen. Code, § 211) with an allegation of use of a firearm by each (Pen. Code, § 12022.5). Appellant's motion for new trial was denied, but the use clause was stricken as to him.[1]

On November 21, 1975, Richard Koster was working as the only attendant at a gas station in Berkeley. A man came to the station office purportedly seeking change, pointed a gun at Koster's chest, and demanded all of the money in the station. Koster gave the robber the money and then, at his direction, turned around and placed his head

---

\*Assigned by the Chairperson of the Judicial Council.

[1]Codefendant Fulmer also appealed, but his appeal was dismissed when he failed to file an opening brief.

down. After a moment, Koster looked up to see that the robber had left and was walking across the street.

While this was occurring, James Podein had driven into the station with Pat Sargent and her child to visit Koster. As they pulled in, they noticed a man standing in the office door with his back towards them, and Podein saw the man pointing a gun at Koster. The robber then began walking away and Podein got out of his car, told Koster to call the police and followed the robber.

A block away the robber got into the front seat of a car, with Podein seeing only one other person in the car. The car pulled away as Sargent drove up to Podein. Podein got in and they followed the car, eventually writing down the license plate number.

The police broadcast a description of the car and, when it was spotted in front of appellant's home a short time after the robbery, the police took Podein there. Podein identified Fulmer, who along with appellant had been inside the house, as the robber. The police then brought Koster to the house and he positively identified Fulmer as the robber.

At trial, appellant's father testified that appellant and Fulmer came into the house shortly before the time of the robbery, but there was a third person in the car who did not come inside.

Fulmer testified at trial that one Larry Walton had been in the car with them at the time of the incident and had asked to get out of the car near the gas station to use the bathroom. Fulmer further testified that Walton returned to the car, jumped into the back seat with money in his hand, said he had committed a robbery and told appellant (who was driving) to "take off."

The defense also called Larry Walton as a witness. He denied committing the crime and denied that he had been with appellant and Fulmer on the day of the incident. Koster testified in rebuttal that Walton was not the robber.

■ Appellant's first contention of error by the trial court was allowing Podein to testify that he had previously worked at the gas station and had quit one and a half weeks before this incident because he was robbed at gunpoint.

Appellant's counsel made a timely objection of irrelevancy which was overruled without comment by the trial judge. ■ Whether or not evidence is relevant is an issue involving the exercise of judicial discretion by the trial court and its conclusion must be sustained on appeal, absent a showing of an abuse of discretion. (*People* v. *Diamond* (1970) 10 Cal.App.3d 798, 801 [89 Cal.Rptr. 126].) ■ Appellant's contention of error is not well taken. Podein's testimony was relevant in explaining his actions at the time of the incident, including his rapid determination that a robbery was in progress, and his motivation in following and identifying the robber.

■ Appellant's next contention of error was allowing the prosecution to cross-examine Fulmer about his failure to implicate Walton at any time prior to his testifying at trial. The United States Supreme Court in *Doyle* v. *Ohio* (1976) 426 U.S. 610 [49 L.Ed.2d 91, 96 S.Ct. 2240], held that a defendant's silence after receiving *Miranda* warnings (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) cannot be used against him, even as impeachment of an explanation he presented for the first time at trial. The basis for this holding was two-fold. First, a silence after the giving of *Miranda* warnings is ambiguous and, secondly, implicit in such warnings is the assurance that the suspect's silence will not be used to impeach a later explanation which is given.

For the purpose of discussing appellant's contention of error, we shall assume for the sake of argument that this questioning of Fulmer under *Doyle* was error as to Fulmer. Can appellant prevail in his contention that this deprived him of a fair trial, and, for all practical purposes, compelled him to forego his right to testify on his own behalf? The answer must be no.

After appellant was arrested and advised of his rights, he agreed to give a statement. He said he and Fulmer had been driving around, had not been in the area of the gas station, and that Fulmer had not gotten out of the car. He did not tell the interviewing officer that anyone else was in the car with them. Appellant exercised his right not to testify at trial.

Appellant contends that *Doyle* error as to Fulmer rubbed off on appellant and requires reversal. Since appellant had given a statement to the police, it would have been proper for the prosecution to cross-examine him, if he chose to testify, about his reasons for not mentioning

Walton in his statement. Because of obvious differences between appellant and Fulmer,[2] appellant was not justified in relying upon the trial court's ruling with respect to the cross-examination of Fulmer in deciding not to testify himself. Having failed to seek a ruling fixing limits to the prosecutor's cross-examination of himself on this issue, appellant improperly relied (if indeed he did rely) upon rulings as to Fulmer as a basis for foregoing his right to testify.

Appellant also argues that since he had not mentioned Walton in his statement to the police, this silence was protected under *Doyle.* Once appellant was properly given his *Miranda* rights and chose to give a statement, he could be fully cross-examined about it. (*People* v. *Farris* (1977) 66 Cal.App.3d 376, 387-390 [136 Cal.Rptr. 366].) Whether or not he chose to testify at trial, his failure to mention Walton in his statement could therefore properly be argued to the jury when his shared defense was that Walton had committed the crime.

During his testimony at trial, Walton denied being with appellant and Fulmer on the day of the robbery and denied that he had committed the robbery. Fulmer's counsel then asked Walton, "Did you tell Mr. Nichols that you had . . .", his question being interrupted by an objection which the trial judge sustained, with the comment "you are not going to ask if he remembers telling . . . if he doesn't remember seeing the man, obviously it is improper."[3] At the conclusion of his testimony, Walton was kept on standby and was not excused.

Following Walton's testimony, a hearing took place outside the presence of the jury, during which Mr. Nichols was examined and cross-examined. Nichols testified that Walton told him in January 1976 that he had committed the robbery for which appellant was charged and gave a few details about it. Nichols also testified that Walton did not tell him that Fulmer had also been charged with the robbery. The trial judge denied a defense motion to allow Nichols' testimony to go to the jury, citing Evidence Code section 352, without specifying its application and use in his ruling.

---

[2] Appellant gave a statement to police but exercised his right not to testify at trial. Fulmer exercised his right not to give a statement to the police but took the stand to testify at trial.

[3] Immediately prior to this, Walton was asked, and responded:
"Q. You remember having a conversation with Stanley Nichols last November or December?
"A. I don't even remember seeing Mr. Nichols that part of last year."

There was also an application by the defense for an examination of Ray Guidry who was then confined in a hospital. An offer of proof was made that Guidry would testify that Walton told him one or two days after the robbery that he, Walton, had committed the robbery. The motion for the examination of Guidry was denied. Apparently the trial court's denial of the motion was also made under section 352 of the Evidence Code.

Appellant contends the refusal to allow Nichols and Guidry to testify to Walton's confession of the robbery to each of them was reversible error. Thus we are confronted with the very difficult legal issue of whether, and under what circumstances, hearsay evidence of a third party's confession should be admitted into evidence to allow a defendant to prove his defense that the third party had committed the crime for which the defendant is accused. Depending upon whether or not the hearsay declarant is available as a witness, the testimony is sought to be admitted under one of the exceptions to the general rule that hearsay evidence is inadmissible. (Evid. Code, § 1200, subd. (b).) If the declarant is unavailable as a witness, the defense would contend that the declaration should be admissible as an exception to the hearsay rule as a declaration against penal interest. (Evid. Code, § 1230.) If the declarant is available as a witness and has testified inconsistently, the defense would contend that the declaration should be admissible to attack the credibility of the declarant and to prove the truth of the statement. (Evid. Code, §§ 770, 780, subd. (h), 1235.)

Historically, legal scholars have argued against the admissibility of such testimony, and the courts have been unwilling to admit it into evidence because of its great potential for untrustworthiness, and its lack of reliability. Eighty-five years ago the California Supreme Court held that testimony about such a confession should not be allowed into evidence. "The rule is settled beyond controversy, that in a prosecution for crime, the declaration of another person that he committed the crime is not admissible. Proof of such declaration is mere hearsay evidence, and is always excluded, whether the person making it be dead or not." (*People* v. *Hall* (1892) 94 Cal. 595, 599 [30 P. 7]; also see *People* v. *Mendez* (1924) 193 Cal. 39, 51 [223 P. 65] and 5 Wigmore, Evidence (3d ed. 1940) § 1476, pp. 283, 287.)

Counterbalancing this philosophy, even in those early days, was the basic right of the defendant to present his case, and defend against the state's accusations, especially when his defense was that a third party, not

a defendant, was the one who committed the crime charged against him. (*People* v. *Mitchell* (1893) 100 Cal. 328, 333-334 [34 P. 698]; also see *Chambers* v. *Mississippi, infra.*)

More recently, but prior to the adoption of the Evidence Code, California courts, although still greatly concerned about the factors of reliability and trustworthiness, turned in the direction of admitting such testimony if the person making the confession could be tied in directly by other evidence with the actual commission of the crime. The cases discussed the kind and quality of evidence essential to admit such testimony and determined that there must be some competent and substantial proof of a probability that the third party committed the crime, not merely possibility or suspicion. (See *People* v. *Spriggs* (1964) 60 Cal.2d 868 [36 Cal.Rptr. 841, 389 P.2d 377]; *People* v. *Gullett* (1966) 245 Cal.App.2d 685 [54 Cal.Rptr. 308] and *People* v. *Buono* (1961) 191 Cal.App.2d 203, 226-229 [12 Cal.Rptr. 604] all of which were decided prior to Jan. 1, 1967, the effective date of the California Evidence Code.)

In *Spriggs,* Justice Traynor, speaking for the California Supreme Court, held that such a hearsay declaration was admissible whether or not the declarant testified at the trial. In that case, the arresting officers observed the defendant and a third party in a darkened doorway. They arrested defendant for the possession of heroin found in the doorway. At the trial, the police officer, under cross-examination, was asked what the third party said to him when he asked her at the scene if the heroin was hers. The trial court sustained an objection made on the grounds of immateriality and hearsay. The issue on appeal was whether the witness should have been allowed to answer the question. The court overruled *People* v. *Hall, supra,* and discussed the difference of opinion on this issue among authorities throughout the United States, as well as the fact that the silence of state legislatures on this subject had required the courts to develop the law of evidence judicially. A footnote to the opinion stated that the record on appeal did not disclose whether or not the third party had been available as a witness at trial.

The opinion in *Spriggs* discussed the necessity for hearsay evidence to be admitted when it is reliable and trustworthy. The court held that the trial court was in error in excluding the hearsay declaration against penal interest because, under the facts of the case, the hearsay declaration possessed such a high degree of trustworthiness. The court held that if the declarant was unavailable as a witness, the hearsay declaration was

admissible as a declaration against penal interest. If the declarant was available as a witness, with the opportunity for cross-examination, the hearsay declaration was admissible to prove the truth of the matter stated as a declaration against interest, and to impeach the declarant by use of a prior inconsistent statement.

On its facts, the holding in *Spriggs* is distinguishable from the case before us. In *Spriggs,* there was no dispute about trustworthiness, the hearsay declaration having been made to a police officer at the scene by a declarant tied in directly with ·the commission of the crime by the evidence. Such is not the case here.

Since the effective date of the Evidence Code, there have been few cases where California's appellate courts have dealt with this issue. When raised, no decision has held that the adoption of the Evidence Code changed the judicially developed rule of evidence with respect to this issue which existed prior to the Evidence Code.

*People* v. *Arline* (1970) 13 Cal.App.3d 200 [91 Cal.Rptr. 520] found that the trial court had properly exercised its discretion in sustaining an objection to proffered evidence that a third party other than the defendant might have committed the crime for which defendant was charged. The court held that before such evidence is admitted it must be examined outside the presence of the jury and there must be a finding of a preliminary fact to permit its admissibility under *People* v. *Buono, supra,* i.e., that the evidence affords more than a possible ground of suspicion that a third person is connected with the crime. Therefore, the court found the trial court's discretion under Evidence Code section 352 had been properly exercised by excluding evidence, the probative value of which was found by the trial court to be substantially outweighed by the probability that its admission would create a substantial danger of undue prejudice.

In *People* v. *Shipe* (1975) 49 Cal.App.3d 343 [122 Cal.Rptr. 701], the court reiterated that Evidence Code section 1230 makes a declarant's statement against his own penal interest admissible if the declarant is unavailable as a witness. However, to satisfy the confrontation clause of the United States Constitution, the declaration against penal interest was required to have a sufficient indicia of reliability to warrant its admission under *Dutton* v. *Evans* (1970) 400 U.S. 74 [27 L.Ed.2d 213, 91 S.Ct. 210], indicia which the *Shipe* court found lacking.

The most recent California decision addressing this subject is *People* v. *Chapman* (1975) 50 Cal.App.3d 872 [123 Cal.Rptr. 862]. There the court refused to allow testimony that one codefendant had been heard by cell mates to confess to the crime charged against the others. The record suggested the existence of a plan by the defendants to have that codefendant take the blame for the crime. The court held that the admissibility of such a confession required an interrelation of Evidence Code sections 352, 403, 405 and 1230 by which the trial judge was charged with making preliminary factual determinations as to the trustworthiness of such a proffered hearsay declaration. The court held, under the circumstances there, that the trial judge had properly exercised his discretion under section 352 in excluding the evidence.

We recognize that *Chapman* and the other discussed cases involve declarations against penal interest in the context of an unavailable declarant. The more difficult question we must answer is whether or not the *Chapman* test for admissibility of a hearsay declaration against penal interest (when the declarant is unavailable as a witness) should also be the test for the admissibility of testimony by other witnesses about a confession by one not a defendant who is available and has testified inconsistently as a witness. In the latter situation, the exception to the hearsay rule which is involved is that for a prior inconsistent statement (Evid. Code, § 1235), not for a declaration against penal interest (Evid. Code, § 1230).

The *Chapman* court stated that the resolution of the issue in dispute in that case involved the effect and interrelationship of Evidence Code sections 352, 403, 405 and 1230. Here the resolution of the issue in dispute involves the effect and interrelationship of Evidence Code sections 352, 403, 405, and 1235. Section 403 provides that the evidence of a person's statement is inadmissible when there is a preliminary factual determination required as to whether or not that person made the statement, unless the proponent of the proffered evidence sustains his burden of producing evidence as to the existence of the preliminary fact and the court finds there is evidence sufficient to sustain a finding of the existence of the preliminary fact. As noted in the comment to Evidence Code section 405, "Section 405 deals with evidentiary rules designed to withhold evidence from the jury because it is too unreliable to be evaluated properly or because public policy requires its exclusion."

■ Where the hearsay declarant is available as a witness, his credibility is in issue. When he testifies and denies having made the

confession or having committed the crime, absent other circumstances, hearsay testimony by another witness as to the declarant's confession would normally be admissible as a prior inconsistent statement.

The defendant's right to present such evidence is not absolute. As with any evidence proffered by a party, the trial judge retains discretion to exclude it under Evidence Code section 352. A determination of trustworthiness is a preliminary fact determination under Evidence Code section 1235 when considered in conjunction with sections 403 and 405, and it forms a part of the court's determination of probative value under Evidence Code section 352. As stated in *Chapman, supra,* at page 881, " '[p]robative' " is defined as " '[t]estimony carrying quality of proof and having fitness to produce conviction of truth . . .' " and the trial court, in weighing "probative value" necessarily considers, among other things, credibility of the witness who testifies to the proffered evidence.

A trial court, as a matter of law, does not abuse its discretion because the evidence rejected under Evidence Code section 352 consists of testimony about a prior inconsistent statement of a third party in which he confessed committing the crime charged against the defendant. ▮▮ Thus, the critical question here is whether, under these facts, the trial court abused its discretion in excluding the evidence under authority of section 352.

In making this determination, we must bear in mind both that the defendant's right to present witnesses in his own defense is one of his most fundamental rights (*Chambers* v. *Mississippi* (1972) 410 U.S. 284 [35 L.Ed.2d 297, 93 S.Ct. 1038]) and that the prosecution as well as the defendant is entitled to protection by the court from prejudicial evidence having little probative value. (*People* v. *Chapman, supra,* at p. 881; *People* v. *Arline, supra,* at p. 205.)

▮▮ It would have been helpful in considering this appeal if the trial judge had fully expressed on the record the basis for excluding the offered evidence, rather than simply stating that he excluded it pursuant to Evidence Code section 352.

However, this is not required if the judge weighed the conflicting factors. (See *People* v. *Holt* (1972) 28 Cal.App.3d 343, 353 [104 Cal.Rptr. 572].) Also, we recognize that unlike justices on the Court of Appeal who have considerably more time to ponder and deliberate on such an issue, the overburdened trial judge must make his determination in a matter of

minutes, sometimes in seconds. The trial judge is given considerable discretion to exclude evidence, otherwise admissible, under Evidence Code section 352. (*People* v. *Holt, supra*; Witkin, Cal. Evidence (2d ed. 1966) § 308.)

We wholeheartedly agree with the following statement by the court in *People* v. *Jackson* (1971) 18 Cal.App.3d 504, 509 [95 Cal.Rptr. 919]: "Because of conditions created by the law explosion, the concept of a kindly, benign trial judge who listens passively and patiently while the lawyers try their cases without his interference is no longer valid—if it ever was. To be a real factor in the administration of justice, a trial judge must alertly supervise proceedings in his court, curbing when necessary over-zealous advocates and, in his rulings on evidence strike a 'careful balance between the probative value of the evidence and the danger of prejudice, confusion and undue time consumption.' (*People* v. *Lavergne*, 4 Cal.3d 735, 744 [94 Cal.Rptr. 405, 484 P.2d 77].) Lawyers are advocates. Asking them to police themselves is not fair. Admitting *all* evidence which has any probative value is sometimes unnecessary to the orderly ascertainment of the truth. The judicious use of the inherent powers of the court, set forth in Evidence Code, section 352, is to be encouraged."

The only evidence admitted in support of appellant's defense that Walton was the robber came from the mouth of Fulmer, and the inference which might be drawn from appellant's father's testimony about a third person in the car. Podein saw only two persons in the car. Koster positively identified Fulmer as the robber. Podein identified Fulmer as the robber. Appellant made a post-arrest statement without mention of Walton or any third party in the car. The record before us does not disclose whether or not, at the time the trial court ruled to exclude this evidence, an offer of proof had been made that Koster would be called as a rebuttal witness to testify that Walton was not the robber, as occurred at the conclusion of the case.

The proposed testimony of Nichols and Guidry was itself not clothed with internal indications of veracity and did not correlate closely with even the defense evidence in the case. Nichols, who was informed by Walton of his involvement in the robbery some two months after it took place, was a friend of both appellant and Walton. And the statement allegedly made by Walton to Nichols two months after the robbery was incomplete in that it failed to mention Fulmer's presence. At the time Walton allegedly made his confession to Guidry, he owed money to

Guidry. The offer of proof as to Guidry's testimony was that Walton confessed to the robbery and took Guidry to a place where the proceeds were hidden, but they were not there. Thus, although Guidry's testimony about a hearsay confession by Walton would have correlated with Fulmer's testimony at trial, a likelihood existed that any such confession, even if made, would have been fabricated by Walton to avoid his payment of his debt to Guidry.

We are compelled to uphold the trial court's determination, absent a clear error of law or manifest abuse of discretion (*People* v. *Alfaro* (1976) 61 Cal.App.3d 414, 423 [132 Cal.Rptr. 356]). Given these factors, we find no such error or abuse of discretion here.

Appellant, on the same issue, has cited *Chambers* v. *Mississippi, supra,* 410 U.S. 284, in which the United States Supreme Court had before it an issue similar to that presented here. Under Mississippi law, a party vouches for the credibility of and is bound by the testimony of witnesses he calls. In *Chambers,* the defendant was charged with (and convicted of) murdering a policeman and sought to present evidence that a third person had spontaneously confessed to shooting the policeman to several acquaintances. The third person had signed a written confession, but had renounced it prior to trial. At trial, the third party denied he had been at the scene. The court felt that the testimony which was rejected bore substantial assurances of trustworthiness and was critical to the defense. The court therefore held that the Mississippi law precluding defendant from cross-examining the third party as an adverse witness *and* the ruling as to the admissibility of hearsay statements which had such a great assurance of reliability[4] combined to deprive the defendant of a fair trial.

The court in *Chambers* went out of its way to emphasize that it limited its holding to the facts and circumstances present there. Under the facts, *Chambers* is clearly distinguishable from the present case and cannot alter our conclusion that the trial judge acted within the discretion vested in him by Evidence Code section 352.

The judgment of conviction of appellant is affirmed.

Scott, Acting P. J., concurred.

[4]It should be noted that the declarations of third party were made independently and spontaneously to close friends of the third party very shortly after the murder, and were corroborated by other evidence, including a signed sworn confession, eyewitnesses to the crime, evidence the third party owned a gun like the one used, the number of verbal confessions, and the fact that all confessions were clearly self-incriminating. .

**FEINBERG, J.**—I concur with the decision of the majority affirming the conviction of appellant. I disagree, however, with the conclusion of the majority that the trial court did not commit error in excluding the testimony of Stanley Nichols and Ray Guidry proffered by the defense.

The evidence in question was proffered pursuant to Evidence Code section 1235.[1] The proffered evidence was rejected by the trial court pursuant to section 352.

The majority states that "[i]t would have been helpful in considering this appeal if the trial judge had fully expressed on the record the basis for excluding the offered evidence, rather than simply stating that he excluded it pursuant to Evidence Code section 352.

"However, this is not required if the judge weighed the conflicting factors. (See *People* v. *Holt* (1972) 28 Cal.App.3d 343, 353 [104 Cal.Rptr. 572].)" (At p. 939.)

I must confess that I do not perceive the thrust of the argument. If the trial court said only that the proffered evidence was excluded under section 352, how do we, as a reviewing court, know that the trial court did, in fact, weigh the conflicting factors? *People* v. *Holt, supra,* cited by the majority, holds only, and I have no disagreement therewith, that when an objection is made to proffered evidence *other than* on section 352 grounds, the trial court has no duty, *sua sponte,* to make an affirmative finding as to the relative weight of the probative value of the evidence as against its prejudicial effect. The *Holt* court goes on to say that if the objection is made upon section 352 grounds, then the record must reflect that the trial judge did weigh the conflicting factors "so that the reviewing court can determine whether [the trial court's] discretion was properly exercised." (*People* v. *Holt, supra,* at p. 353.)

Here, of course, the objection was made on section 352 grounds.

In effect, the majority has reviewed the evidence and sustained the exercise of the trial court's discretion without knowing what factors the trial court considered in exercising its discretion. Thus, the weighing process being wanting, the majority supplies it by performing the weighing process itself. I do not conceive this to be our function.

---

[1]Hereafter, all references to sections are to California Evidence Code sections.

But the trial court did, though somewhat obliquely, advert to the reasons for its rulings. After the trial court had excluded the testimony of Nichols, defense counsel proffered the testimony of Guidry. The trial court stated, "if you have anything positive in connection with this [the proffer of Guidry's testimony], I will consider it. But if it isn't stronger and more reliable and it will have to be on the central issue and not on a collateral issue." It is clear from the record that the trial court was saying that if the proffered testimony of Guidry was not "stronger," "more reliable" than Nichols' proffered testimony and not collateral as Nichols' was, then it would suffer the same fate, i.e., exclusion.

Certainly, the proffered evidence was not collateral. It bore directly upon a fundamental issue, namely, was it Fulmer who got out of the car and committed a robbery at gun point?

*May a prior inconsistent statement of a witness,*
*which purports to show that the witness committed*
*the crime with which the defendant is charged,*
*be excluded as unreliable as an exercise of discretion*
*under section 352?*

The majority opinion reasoning seems to be as follows: The prior inconsistent statement is admissible under section 1235. However, the trial court, pursuant to section 403, can make a determination of the preliminary fact of reliability. If the trial court determines that the proffered evidence is unreliable, it can then exclude that evidence as an exercise of its discretion under section 352.

I disagree with this reasoning. *First,* if the proffered evidence is unreliable, it is inadmissible by the terms of section 403, hence, any reference to section 352 is gratuitous. *Second,* and more important, the preliminary fact of reliability where the proffered evidence is a prior inconsistent statement of a witness is *not* the credibility of the proposed witnesses to the prior inconsistent statement. The preliminary fact is the *identity* of the declarant. Thus, if there is evidence sufficient to make a finding that Walton, the witness at trial, was the declarant who made the prior inconsistent statement, the prior inconsistent statement should have been admitted and the credibility of the witnesses, Nichols and Guidry, left to the jury.[2]

---

[2] "Prior inconsistent statements . . . [are] relevant and probative if the witnesses to the statements are ·credible. The credibility of the witnesses testifying to these statements

The majority relies in some measure on the case of *People* v. *Chapman* (1975) 50 Cal.App.3d 872 [123 Cal.Rptr. 862]. *Chapman* involved the admissibility of a declaration against penal interest with the declarant, of course, unavailable as a witness. There, the record strongly suggested that the declarant's exculpatory statements were fabricated either willingly or through coercion. No such evidence was adduced here. *Chapman* involved, as the majority noted, a declaration against penal interest under section 1230, not a prior inconsistent statement under section 1235. The inherent problem of unreliability posed by the admissibility of hearsay is virtually nonexistent with regard to a prior inconsistent statement.[3]

### *Was the proffered evidence reliable?*

Assuming that a trial court may, in the interplay of sections 352, 403 and 1235, exclude a prior inconsistent statement on the basis of unreliability, there is nothing inherently incredible in the proffered testimony. Nichols' testimony is simple and direct. Walton told him that he, Walton, had committed the robbery with which appellant was charged. With regard to Guidry, the proffered testimony was similar and though that testimony did go on to elaborate a matter that might strain one's credibility, I cannot say that it passed beyond the bounds.

should be decided finally by the jury. Moreover, the only preliminary fact subject to dispute insofar as alleged inconsistent statements are concerned is the identity of the declarant. Hence, evidence is admitted under these sections upon the introduction of evidence sufficient to sustain a finding of the preliminary fact." (See Legis. Committee com., West's Ann. Evid, Code, § 403 (1966 ed.) pp. 269-270 [Deering's Ann. Evid. Code, § 403 (1966 ed.) pp. 407-408].)

[3] "Section 1235 admits inconsistent statements of witnesses because the dangers against which the hearsay rule is designed to protect are largely nonexistent. The declarant is in court and may be examined and cross-examined in regard to his statements and their subject matter. In many cases, the inconsistent statement is more likely to be true than the testimony of the witness at the trial because it was made nearer in time to the matter to which it relates and is less likely to be influenced by the controversy that gave rise to the litigation. The trier of fact has the declarant before it and can observe his demeanor and the nature of his testimony as he denies or tries to explain away the inconsistency. Hence, it is in as good a position to determine the truth or falsity of the prior statement as it is to determine the truth or falsity of the inconsistent testimony given in court." (See Legis. Committee com., West's Ann. Evid. Code, § 1235 (1966 ed.) p. 221 [Deering's Ann. Evid. Code, § 1235 (1966 ed.) p. 162]; the Supreme Court has held that a prior inconsistent statement of a witness is admissible only if it is offered in the very proceeding at which the witness testified. (*People* v. *Williams* (1976) 16 Cal.3d 663 [128 Cal.Rptr. 888, 547 P.2d 1000], overruling *People* v. *Bynum* (1971) 4 Cal.3d 589 [94 Cal.Rptr. 241, 483 P.2d 1193].)

Parenthetically, under the new Federal Rules of Evidence, a prior inconsistent statement is not hearsay at all. (See Fed. Rules Evid., rule 801(d)(1), 28 U.S.C.A.)

Nor did the examination of Nichols, outside the presence of the jury, in any way suggest that Nichols was an unreliable witness. As for Guidry, we have no indicia as to his reliability since he was never examined.

I conclude, therefore, that the trial court committed error. In so concluding, I, too, am mindful of the strictures under which trial courts operate but I take it that it is not our function to gloss over error because of the adversities under which trial courts must conduct their business.

*Should the error result in a*
*reversal of the judgment below?*

Even if the error was of constitutional magnitude, in that it arguably deprived the defense of due process of law, as the majority discusses, I am of the view that the record discloses that the error, as to appellant, was harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

As the case went to the jury, appellant was the driver of the car; Fulmer was the man who got out of the car and held up, at gun point, the gasoline station attendant. In the posture of the case, it could not have made any difference as to appellant's guilt whether two men had been in the car and Fulmer got out and used the gun or three men had been in the car and Walton got out and used the gun. True, it could have made a considerable difference to Fulmer since he was found to have used the gun in violation of Penal Code section 12022.5, thereby adding five years to his sentence. But Fulmer is not the appellant here, Love is.

A fortiori, if by the most stringent rule on appeal, the error is not reversible, then it is not reversible by any lesser standard.

Accordingly, I concur in the decision affirming the judgment.