[Crim. No. 19485. First Dist., Div. Four. Apr. 7, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
CORNELIUS PERRY, Defendant and Appellant.

**COUNSEL**

Peter Bresciani, under appointment by the Court of Appeal, Quin Denvir, State Public Defender, and Mark Fogelman, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and Kristofer Jorstad, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CHRISTIAN, J.**—Cornelius Perry appeals from a judgment of imprisonment which was rendered after a jury found him guilty of assault by means of force likely to cause great bodily injury (Pen. Code, § 245, subd. (a)).

Appellant followed and attacked a young woman who was walking in Golden Gate Park in San Francisco. Appellant choked and struck the victim and banged her head against trees. The victim cried out for help, a man came up, and appellant fled. The victim identified appellant at trial from his general appearance and from a curved scar on his forehead.

Jacques Cusin, a teacher who had been supervising a soccer game nearby, had seen appellant a few minutes earlier. When Cusin saw what

was happening, he chased appellant. Police officers joined the chase and appellant was captured. The victim immediately identified him.

At trial the defense offered to prove that one Mathew Wolf had robbed and raped a woman in Golden Gate Park three years earlier and that Wolf had robbed and raped another woman in the same park about an hour before the charged offense. ■ The court examined a photograph of Wolf and determined that "except for the race of the man there is nothing similar" before rejecting the offer. Appellant contends that the ruling was error. On the contrary, it was a proper exercise of the court's power, under Evidence Code section 352, to exclude evidence that has minimal probative value in comparison with its potential for uselessly prolonging a trial and confusing the issues. (See *People* v. *Chapman* (1975) 50 Cal.App.3d 872, 881 [123 Cal.Rptr. 862]; *People* v. *Arline* (1970) 13 Cal.App.3d 200, 205 [91 Cal.Rptr. 520].)

The judgment is affirmed.

Caldecott, P. J., concurred.

**POCHÉ, J.**—I respectfully dissent because more is involved here than review of a trial judge's examination of a photograph and the citation by this court of two Court of Appeal decisions to seal the result. What is involved is substantial interference with the due process guarantee of a fair trial.

A defendant's right to present evidence in his own defense is so fundamental that it constitutes an element of due process of law. (Cf., *Chambers* v. *Mississippi* (1973) 410 U.S. 284, 302 [35 L.Ed.2d 297, 313, 93 S.Ct. 1038].) Several California cases have expressly recognized the tension between this fundamental right and any exercise of discretion under Evidence Code section 352, which tends to limit the defendant's presentation. (Cf., *People* v. *Lavergne* (1971) 4 Cal.3d 735, 744 [94 Cal.Rptr. 405, 484 P.2d 77]; *People* v. *Mayfield* (1972) 23 Cal.App.3d 236, 242-243 [100 Cal.Rptr. 104]; *People* v. *Reeder* (1978) 82 Cal.App.3d 543, 557 [147 Cal.Rptr. 275]; *People* v. *Stevenson* (1978) 79 Cal.App.3d 976, 989-990 [145 Cal.Rptr. 301].)

A stark example of that push and pull is the situation illustrated by this action: to raise a reasonable doubt as to guilt, the defendant pro-

poses to suggest to the trier of fact that someone else committed the crime. At trial, there was uncontradicted evidence that an assault in violation of Penal Code section 245, subdivision (a) occurred. The only substantial issue was the identity of the assailant. Appellant admitted being in the area, but denied any knowledge of the crime. He sought to introduce evidence that one Wolf had raped a woman in the same area of Golden Gate Park shortly before the attack with which appellant was charged and that Wolf had raped another woman in the same area some three years earlier. Like appellant, Wolf was black, approximately 6 feet tall, and weighed approximately 160 pounds. On the day of the attack, both Wolf and appellant were wearing their hair in distinctive "sectional braids."

To understand or to intelligently review what really happened in this case the detail of appellant's argument accompanying his offer of proof must be examined. Defense counsel cited: "17 points of similarity between these two cases. I would like to list them for your Honor. They are in both cases. We have young white females. Both of these cases took place in a very small area of Golden Gate Park. In both instances the individuals attempted to engage the woman in conversation. Both of these attempts to engage the woman in conversation took place on a path, in Golden Gate Park. He then grabbed the woman around the neck as opposed to any other place, there's lots of ways to grab people, but these two people always grab them around the neck. He pulls them off the path into the bushes in both cases.

"In both cases the individual was wearing distinctive braided hair. This is the same day. . . .

"Both of these individuals were wearing blue pants. [¶] Mr. Wolf was wearing light blue pants, Mr. Perry dark blue pants, but both of them had on blue pants. [¶] All you have to do is be off on the shade. . . .

"Two other witnesses come into court and they can only remember the braided hair. You say they remembered something more. That doesn't do me any good because on cross examination all they say is it's braided hair and the jury's going to sit there and say Mr. Perry's the only guy with braided hair. . . he's got to be it. He isn't the only guy, there is another man in that park attacking women who's got that same braided hair.

"If this evidence is so immaterial the jury will just ignore it. This is going to take 45 minutes of the Court's time and for me it's the most important thing in Mr. Perry's defense. This is what his defense is based upon, the fact that there could be somebody else." The prosecutor countered that evidence which raises no more than a possibility that a third party committed the crime should be excluded. (Cf., *People* v. *Arline* (1970) 13 Cal.App.3d 200 [91 Cal.Rptr. 520].) The evidence was not admitted.

Possible offers of proof could be spread on a continuum from the Perry Mason-style disclosure that a *specific third person* actually *committed* the crime, to the most general showing that *anyone* else *could have* committed it. Between these extremes are the various situations in which one or a limited number of third persons who might have done it are identified, yet the evidence—proximity, ability, predilection, or motive—falls short of direct proof.

In this gray zone between the extremes, California courts have tended to hold that such evidence should be excluded if it falls measurably short of a clear showing that the third person committed the crime. Even before section 352 was enacted, this result was rationalized in terms of the considerations of judicial administration which Evidence Code section 352 codified. It is a sadness that no court seems to have been specific as to how evidence of third party culpability tends, any more than any other kind of evidence, to consume too much time, or to prejudice, confuse, or mislead.

The general form and phraseology of the California approach was reviewed accurately by this court in a 1978 opinion which involved an attempt by a defendant, charged with an assaultive crime, to show that the victim had fired a gun at defendant: "A defendant may establish his innocence by proving directly or circumstantially that some other person or persons committed the crime with which he is charged. [Citations.] But the mere *possibility* that some third person did it is not enough. There must be some competent and substantial proof of a probability that this actually happened. [Citations.] '[E]vidence which simply affords a possible ground of possible suspicion against another person should be inadmissible.' [Citation.] [¶] Evidence Code section 352 vests the trial court with discretion to exclude evidence if its probative value is outweighed by the probability that its submission would 'create substantial danger of undue prejudice, of confusing the issues, or

of misleading the jury.' In a criminal case, evidence which simply affords a possible ground of suspicion against a third person is generally excluded as unduly prejudicial. '[T]he prosecution as well as the defendant is entitled to the protection of the court from prejudicial evidence.' [Citations.]" (*People* v. *Whitney* (1978) 76 Cal.App.3d 863, 869-870 [143 Cal.Rptr. 301], italics in original.)

Today, the case most commonly cited for the existence of discretion to exclude, and for the procedure by which the discretion is to be exercised, is *People* v. *Arline, supra*, 13 Cal.App.3d 200. Arline, charged with armed robbery of a gas station, sought to prove that one Gordon had robbed a gas station two months later using a similar modus operandi. Gordon had been in town at the time of the crime with which Arline was charged and had a similar physical description.

"We recognize that proof that another person committed the offense in question would exculpate the appellant. Evidence tending to prove such a claimed fact is, however, subject to certain limitations. In *People* v. *Buono*, 191 Cal.App.2d 203, at page 228 [12 Cal.Rptr. 604], the court said: 'A defendant may, of course, establish his innocence by proving directly or circumstantially that some other person or persons [committed the offense]. But the mere possibility that some third person did it is not enough. There must be some competent and substantial proof of a probability that this happened. *People* v. *Mendez* 193 Cal. 39, 51, 52 [223 P. 65]: "'It is always proper to show that some other person and not the defendant committed the crime with which he is charged.' (*People* v. *Mitchell*, 100 Cal. 328, 333 [34 P. 698, 700].) The question herein is what kind and quality of evidence is essential to that end.... It seems clear that a defendant, in order to exculpate himself, should not be required to establish the guilt of a third person with the degree of certainty requisite to sustain a conviction of the latter. On the other hand, it seems equally clear that evidence which simply affords a possible ground of possible suspicion against another person should be inadmissible."' (Italics added.)

"· · · · · · · · · · · · · · · ·

"Whether proffered evidence should be excluded on the grounds it will be prejudicial is generally for the trial judge to decide. 'The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will...create substantial danger of undue prejudice....' (Evid. Code, § 352.) Even

where evidence is relevant, it may be excluded for 'counter-balancing factors,' including undue prejudice. (See Witkin, Cal. Evidence (2d ed. 1966) § 308, p. 272; *People* v. *Chacon*, 69 Cal.2d 765, 777 [73 Cal. Rptr. 10, 447 P.2d 106].) Here the proffered testimony had no probative value and little if any relevance; the only possible effect it could have on the outcome of the case would have been to create suspicion and, hence, prejudice in the minds of jurors.

"Cases almost without number hold that evidence unduly prejudicial to the defendant, compared with its probative value, must be excluded.

"It would seem to be an elementary although too seldom enunciated principle that the prosecution as well as the defendant is entitled to the protection of the court from prejudicial evidence. In this instance the trial judge properly afforded the prosecution such protection." (13 Cal.App.3d at pp. 204-205, fns. omitted.) *Arline* appears to have been the first published appellate opinion relevant to the third-party culpability issue after enactment of Evidence Code section 352. *People* v. *Mendez* (1924) 193 Cal. 39 [223 P. 65] and *People* v. *Perkins* (1937) 8 Cal.2d 502 [66 P.2d 631] appear to have been the only Supreme Court cases which have approved exclusion of third party culpability evidence, and the *Mendez* language repeated in *Arline, supra*, suggests reasonably broad trial court discretion.

Unfortunately the court's conclusion in *Arline*, while appropriate to the circumstances before it, tends by its phrasing to invite automatic application of the *Mendez* language as a general rule of inadmissibility: evidence which "simply affords a possible ground of possible suspicion against another person" is inadmissible. The invitation has been widely accepted (cf., *People* v. *Hayden* (1973) 30 Cal.App.3d 446, 449 [106 Cal.Rptr. 348], disapproved as to unrelated point in *People* v. *Chapman* (1975) 50 Cal.App.3d 872, 880-881 [123 Cal.Rptr. 862]; *People* v. *Love* (1977) 75 Cal.App.3d 928, 939 [142 Cal.Rptr. 532]; *People* v. *Whitney* (1978) 76 Cal.App.3d 863, 869-870 [143 Cal.Rptr. 301]).

One difficulty with this "*Mendez-Arline*" approach is that it obscures the trial court's obligation to exercise something akin to discretion in order to determine whether the proferred evidence "simply affords a possible ground of possible suspicion" or is stronger and therefore perhaps admissible. The *Mendez-Arline* line of cases does not give trial courts much in the way of practical guidance as to how to make this determination. The result, as indicated, seems to be that appellate courts

will sustain orders which exclude such evidence unless the evidence directly inculpates the third person or persons. The case at hand is exhibit A.

A more fundamental problem is that *Mendez-Arline* emphasizes probative value with respect to the *third party's* culpability. This focus may be misplaced. Professor Wigmore has persuasively maintained that the real test is relevance to the *defendant's* culpability. He would admit evidence of third party threats, motive, conviction and confession (1 Wigmore, Evidence (3d ed. 1940) §§ 140-142, pp. 574-579), because "the fact of the existence of a third person capable of being mistaken for the one charged is some evidence that he possibly or probably did the things attributed to the person charged." (*Id.*, § 142, p. 579.) He encourages consideration of "the possibilities of showing the guilt of a third person by the use of *identifying features* common to the present act and a third person's *former* act...." (*Id.*, § 142, fn. 5, p. 579.) In short, Wigmore would admit any evidence which has any rational tendency to raise a reasonable doubt as to the defendant's guilt.

California's own Wigmore, Justice Bernard Jefferson, speaking for the court in *People v. Reeder* (1978) 82 Cal.App.3d 543 [147 Cal.Rptr. 275], has also expressed misgivings as to the breadth of the *Mendez-Arline* approach. He noted that such a rule of exclusion "must be considered in the light of the more fundamental principle that a defendant's due process right to a fair trial requires that evidence, the probative value of which is *stronger* than the *slight-relevancy* category and which tends to establish a defendant's innocence, cannot be excluded on the theory that such evidence is prejudicial to the prosecution."

He continued: "...Evidence Code section 352 must bow to the due process right of a defendant to a fair trial and to his right to present all relevant evidence of *significant* probative value to his defense. In *Chambers v. Mississippi* (1973) 410 U.S. 284..., it was held that the exclusion of evidence, vital to a defendant's defense, constituted a denial of a fair trial in violation of constitutional due-process requirements.

"We do not mean to imply, however, that a defendant has a constitutional right to present all relevant evidence in his favor, no matter how limited in probative value such evidence will be so as to preclude the trial court from using Evidence Code section 352." (82 Cal.App.3d at pp. 552-553, italics in original.)

In sum, *Mendez-Arline* tends to *exclude* evidence of third party culpability on all but extraordinarily strong showings. Wigmore tends to *admit* such evidence on all but extraordinarily weak showings. Each involves a rhetorical formula which can be treated, uncritically, as a hard and fast rule. Under *Mendez-Arline*, no more than a "possible ground of possible suspicion"; in Wigmore's view, "a question...only of raising a reasonable doubt."

Applying each test to the case at hand gives dramatically different results. Under *Mendez-Arline*, the trial court would be required to exclude the evidence because in the absence of *direct* evidence linking Wolf to the attack, appellant's offer could be said to create no more than a "possible ground of suspicion" that Wolf had done it. That, of course, does not allow analysis of whether the evidence is relevant to the *defendant's innocence*. Wigmore, on the other hand, would have let the evidence in because it does tend to raise a reasonable doubt as to the identification testimony.

Each of these methods is inflexible. Such rigidity carries the danger of prayer wheel repitition of rigid formulae rather than the careful weighing, the discretion, demanded by section 352. More in keeping with due process is the kind of discretionary approach contemplated by the drafters of section 352, within the understandable limits suggested by Justice Jefferson in *Reeder*. Under such an analysis the trial court would address at least the following questions:

—Does the evidence have any significant tendency to establish appellant's innocence?

—How important is the evidence to appellant's defense?

—How much time will the evidence consume?

—What tendency has the evidence to create a risk of undue prejudice, of confusing the issues or of misleading the jury?

In this case, the only issue was identity. Appellant persuasively suggested similarities in appearance and in modus operandi between Wolf and the assailant, placed Wolf in physical and temporal proximity to the crime, identified and exploited a variety of weaknesses in the prosecution's identification testimony, made known that his entire defense focused on Wolf and estimated that this third party culpability evidence

could be adduced in less than one hour. To exclude that testimony was error because "Evidence Code section 352 must bow to the due process right of a defendant to a fair trial and to his right to present all relevant evidence of *significant* probative value to his defense." (See Jefferson, J. in *Reeder, supra.*) Because that error deprived appellant of his due process right to present a defense I would reverse the judgment.

A petition for a rehearing was denied April 23, 1980. Poché, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied June 19, 1980. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.