Cornelious PERRY, Petitioner-Appellant,

v.

Ruth L. RUSHEN, et al.,
Respondents-Appellees.

CA No. 81–4407.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 12, 1983.

Decided Aug. 26, 1983.

Mark Fogelman, Deputy State Public Defender, San Francisco, Cal., for petitioner-appellant.

Kristofer Jorstad, San Francisco, Cal., for respondents-appellees.

Before FLETCHER, POOLE and CANBY, Circuit Judges.

CANBY, Circuit Judge:

The appellant, Cornelious Perry, was convicted of aggravated assault in California Superior Court. Contending that the exclusion of two defense witnesses violated due process, Perry petitioned for a writ of habeas corpus in federal district court. The district court denied the petition, and Perry appeals. We affirm.

## FACTS

A young woman, walking through Golden Gate Park at about 4:30 p.m., stopped to ask directions of a man who was jogging with a dog. The man gave her directions and then, against her wishes, began to walk with her. The man offered her some money, which she refused. He then grabbed her around the neck and began trying to pull her off the path. When the woman screamed and clung to tree branches, he banged her head against them. The screams attracted bystanders. The assailant fled. One citizen chased the assailant and, as the chase neared a police station, ran in to get help. Emerging, the citizen saw a man standing on the sidewalk with his dog. The citizen told the police that this

was the man he had been chasing, and the police arrested him. The man was Perry.

The victim identified Perry as her assailant at the police station shortly after the attack and again at trial. She based her identification on Perry's general appearance and on a distinctive scar on his forehead. Other witnesses also identified Perry as the man they had seen in the park shortly before the attack and again when he was running from the area after the screams were heard.

In his own defense, Perry testified that he had never entered the park that day. Perry sought to support his story by introducing evidence that another man, Wolfe, might have committed the assault and been confused with Perry. The evidence consisted of testimony of two witnesses who had been robbed and raped by Wolfe in the same area of the park. One attack had occurred exactly three years earlier, and the second only an hour before the assault with which Perry was charged. Both Perry and Wolfe are black, of similar height and weight, and had distinctive "sectionally braided" hair on the day of the assault. On that afternoon, Wolfe was wearing a brown leather jacket and blue jeans; Perry wore a light brown jacket and blue warm-up pants. Wolfe has been convicted of both previous attacks.

California Evidence Code section 352 governs the admission of such collateral evidence:

> The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.[1]

California cases supply a gloss on section 352 when evidence is advanced that a third party may have committed the crime. Under the so-called *"Mendez-Arline"* rule, evidence of third party culpability is inadmissible "if it simply affords a possible ground of suspicion against such person; rather, it must be coupled with substantial evidence tending to directly connect that person with the actual commission of the offense." *People v. Green,* 27 Cal.3d 1, 22, 609 P.2d 468, 480, 164 Cal.Rptr. 1, 13 (1980). *Accord People v. Mendez,* 193 Cal. 39, 223 P. 65 (1924), *overruled on other grounds, People v. McCaughan,* 49 Cal.2d 409, 317 P.2d 974 (1957); *People v. Edmond,* 200 Cal.App.2d 278, 19 Cal.Rptr. 302 (1962); *People v. Arline,* 13 Cal.App.3d 200, 91 Cal.Rptr. 520 (1970).

Three times during the course of the trial the judge considered whether to admit evidence of Wolfe's acts. Perry argued that this evidence showed that a similar looking person was in the same area of the park at about the same time, and was committing assaults in a similar fashion. After viewing photographs of Perry and Wolfe, however, the judge decided that misidentification was unlikely: "Except for the race of the man, there is nothing similar." The judge therefore excluded the testimony under Rule 352.

Perry was convicted and sentenced to three years' imprisonment. The California Court of Appeals affirmed the conviction over a vigorous dissent. *People v. Perry,* 104 Cal.App.3d 268, 163 Cal.Rptr. 522 (1980). The California Supreme Court declined to hear the case, *id.,* and the United States Supreme Court denied certiorari. *Perry v. California,* 449 U.S. 957, 101 S.Ct. 366, 66 L.Ed.2d 223 (1980). Perry then petitioned the district court for a writ of habeas corpus. The district court considered his claims thoroughly, but dismissed them. *Perry v. Watts,* 520 F.Supp. 550 (N.D.Cal. 1981). This appeal followed.

## I.

Perry argues that the application of California evidence law violated his sixth and

---

**1.** California Evidence Code § 352 is very similar to Federal Rule of Evidence 403. Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence.

fourteenth amendment rights. Generally, of course, the states are free to fashion rules of evidence and procedure for their own courts. The United States Constitution, however, imposes some limits on the state's power to exclude evidence in criminal cases.

 The sixth amendment guarantees the accused "compulsory process for obtaining witnesses in his favor." This right is a part of the due process that the fourteenth amendment requires of the state. *Washington v. Texas,* 388 U.S. 14, 18–19, 87 S.Ct. 1920, 1922–1923, 18 L.Ed.2d 1019 (1967). Compulsory process implicitly prevents the state from arbitrarily excluding such testimony. "The Framers of the Constitution did not intend to commit the futile act of giving to a defendant the right to secure the attendance of witnesses whose testimony he had no right to use." *Id.* at 23, 87 S.Ct. at 1925. The defendant's general fourteenth amendment right to due process also restrains the operation of state rules of evidence. Due process "is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973). State evidentiary rules "may not be applied mechanistically to defeat the ends of justice." *Id.* at 302, 93 S.Ct. at 1049. These twin strands intertwine to restrain state law. *See id.*

 The defendant's right to present evidence, however, is not absolute. "In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers,* 410 U.S. at 302, 93 S.Ct. at 1049 (right to confront witnesses). Even relevant and reliable evidence can be excluded when the state interest is strong. *See Washington,* 388 U.S. at 23 n. 21, 87 S.Ct. at 1925 n. 21 (attorney-client privilege).

Supreme Court decisions provide limited guidance in resolving this clash between state rules and the defendant's right to introduce evidence. On several occasions, the Court has held that state evidentiary rulings were unconstitutional. Yet, in each case, the court has limited its rulings to the specific facts before it. *Green v. Georgia,* 442 U.S. 95, 97, 99 S.Ct. 2150, 2151, 60 L.Ed.2d 738 (1979) ("these unique circumstances"); *Chambers,* 410 U.S. at 303, 93 S.Ct. at 1050 ("under the facts and circumstances of this case"); *Webb v. Texas,* 409 U.S. 95, 98, 93 S.Ct. 351, 353, 34 L.Ed.2d 330 (1972) ("in the circumstances of this case"). The Supreme Court has found it unnecessary to formulate any flat test to determine when state rules of procedure or evidence trespass upon constitutionally protected ground.

 The Supreme Court seems to have applied a balancing test to resolve such conflicts, weighing the interest of the defendant against the state interest in the evidentiary rule. *See Chambers,* 410 U.S. at 295, 93 S.Ct. at 1045 ("Of course, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process"); *Green v. Georgia,* 442 U.S. 95, 97, 99 S.Ct. 2150, 2151, 60 L.Ed.2d 738 (1979); *Washington v. Texas,* 388 U.S. at 19–23, 87 S.Ct. at 1923–25. At least two circuits have adopted such an approach. *Pettijohn v. Hall,* 599 F.2d 476, 481 (1st Cir.1979), *cert. denied,* 444 U.S. 946, 100 S.Ct. 308, 62 L.Ed.2d 316 (1979); *McMorris v. Israel,* 643 F.2d 458, 461 (7th Cir.1981), *cert. denied,* 445 U.S. 967, 102 S.Ct. 1479, 71 L.Ed.2d 684 (1982); *Alicea v. Gagnon,* 675 F.2d 913, 923 (7th Cir.1982). We conclude that a balancing test is appropriate in these situations.

The selection of a balancing approach, however, does not end our inquiry; we must still determine what weight the various interests will carry when placed on the scales. The right to present a defense is fundamental. *Chambers,* 410 U.S. at 302, 93 S.Ct. at 1049; *United States v. Ballesteros-Acuna,* 527 F.2d 928, 930 (9th Cir.1975); *United States v. Garner,* 581 F.2d 481, 488 (5th Cir.1978); *United States v. Thomas,* 488 F.2d 334, 335 (6th Cir.1973). Because

this right is so important, language from some cases and commentary suggests that the defendant's right carries conclusive weight, and that the exclusion of *any* relevant evidence is unconstitutional. Perry argues that our decision in *United States v. Armstrong,* 621 F.2d 951 (9th Cir.1980), supports this view. In that case, the trial court excluded evidence that another man, also matching the description of the robber, had used bait money from the robbery to purchase a car. We reversed:

> Fundamental standards of relevancy, subject to the discretion of the court to exclude cumulative evidence and to insure orderly presentation of a case, require the admission of testimony which tends to prove that a person other than the defendant committed the crime that is charged. *See Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973); *Pettijohn v. Hall,* 599 F.2d 476, 482 (1st Cir.) *cert. denied,* 444 U.S. 946, 100 S.Ct. 308, 62 L.Ed.2d 315 (1979); *United States v. Robinson,* 544 F.2d 110, 113 (2d Cir.1976), *cert. denied,* 434 U.S. 1050, 98 S.Ct. 901, 54 L.Ed.2d 803 (1977); *Holt v. United States,* 342 F.2d 163, 165–66 (5th Cir.1965). The exclusion of this testimony was prejudicial, and we reverse the conviction on count II.

*Id.* at 953.

Although citing constitutional cases, *Armstrong* reviewed an application of the Federal Rules of Evidence by the federal district court. We reversed because the district court had made an error in applying those rules. Mention was made of neither the sixth amendment nor due process. Nothing in *Armstrong* supports a belief that the Federal Rules of Evidence are constitutionally required, or that the Constitution requires admission of all relevant evidence. For the same reason the petitioner's reliance upon *United States v. Robinson,* 544 F.2d 110 (2d Cir.1976), *cert. denied,* 434 U.S. 1050, 98 S.Ct. 901, 54 L.Ed.2d 803

(1977), and *Holt v. United States,* 342 F.2d 163 (5th Cir.1965), is misplaced.[2] "In addition, the defendant in *Armstrong,* in offering evidence that another man also matching the description of the robber had used bait money from the robbery to purchase a car the day after the crime, may be said to have presented some 'substantial evidence tending to directly connect that person with the actual commission of the offense.' *Green,* 27 Cal.3d at 22, 164 Cal.Rptr. 1, 609 P.2d 468."

The defendant's general right to present evidence is undeniably strong; yet the state's legitimate interest in reliable and efficient trials is also compelling. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (state interest in orderly criminal trial process is sufficient to prevent federal courts from enjoining most state criminal trials); *Branzburg v. Hayes,* 408 U.S. 665, 690, 92 S.Ct. 2646, 2661, 33 L.Ed.2d 626 (1972) (state interest in "fair and effective law enforcement" overrides a reporter's first amendment interest in preserving the secrecy of sources); *Cox v. Louisiana,* 379 U.S. 559, 562, 85 S.Ct. 476, 479, 13 L.Ed.2d 487 (1965) (interest in protecting the state's judicial system justified prohibition of picketing near courthouse); *United States v. Nixon,* 418 U.S. 683, 709–12, 94 S.Ct. 3090, 3108–09, 41 L.Ed.2d 1039 (1974) (interest in fair administration of criminal justice outweighs general executive privilege in confidential documents); *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (state interest in reliable trials can prevail over defendant's rights to confront witnesses, where hearsay evidence is needed and reliable). In our federal system, states have always retained considerable freedom in adopting procedures for their own courts. *Spencer v. Texas,* 385 U.S. 554, 564, 87 S.Ct. 648, 653, 17 L.Ed.2d 606 (1967); *Britton v. Rogers,* 631 F.2d 572, 580 (8th Cir.1980), *cert. denied,* 451 U.S. 939,

---

**2.** The Fifth Circuit Court of Appeals, in *United States v. Davis,* 639 F.2d 239 (1981), seemed to equate Rule 403 with due process: "If the trial court abuses its discretion in excluding evidence under Rule 403, the error is of constitu-

tional proportion." *Id.* at 244. This will often be the case. We do not believe, however, that Rule 403 is identical to the due process line or that every error in applying such a rule results in a constitutional violation.

101 S.Ct. 2021, 68 L.Ed.2d 327 (1981); *Vines v. Muncy,* 553 F.2d 342, 347 (4th Cir.1977), *cert. denied,* 434 U.S. 851, 98 S.Ct. 163, 54 L.Ed.2d 120 (1977); *Manning v. Rose,* 507 F.2d 889, 892 (6th Cir.1974). We "should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States." *Patterson v. New York,* 432 U.S. 197, 201, 97 S.Ct. 2319, 2322, 53 L.Ed.2d 281 (1977).

Two Supreme Court cases demonstrate the unusually compelling circumstances required to outweigh the strong state interest in administration of its trials. In *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), the defendant tried to introduce evidence that another person had confessed to the crime. The trial court excluded the testimony as hearsay. The Supreme Court observed that the hearsay was trustworthy because it went against the declarant's penal interest. It was also critical: only the excluded testimony could present Chambers' side of the story. *Id.* at 302, 93 S.Ct. at 1049. The Court held that exclusion of this critical and reliable evidence deprived Chambers of due process. *Id.*

In *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), Washington was charged with a murder in which another man, Fuller, had participated. Fuller had already been convicted of the same murder. At his separate trial, Washington tried to call Fuller to testify. Fuller would have testified that Washington had tried to persuade him to leave the scene, and had fled before Fuller fired the fatal shot. 388 U.S. at 16, 87 S.Ct. at 1921. This offer of testimony was excluded under an antique Texas statute prohibiting any co-participant in a crime from testifying in behalf of his fellow participant, rather than under a rule of evidence similar to section 352. *Id.*

The Texas rule was apparently grounded on the belief that accomplices would be inclined to lie in order to get each other acquitted. *Id.* at 21, 87 S.Ct. at 1924. Un-like the testimony in *Chambers,* Fuller's testimony lacked special assurances of reliability. Nevertheless, the Supreme Court found that its exclusion violated the defendant's rights because the state interest was weak. The rule did not rationally exclude a class of witnesses particularly likely to lie, because their testimony was considered sufficiently reliable for use by the prosecution. A rule so arbitrary and unfair served no legitimate state aim; the rights of the defendant therefore were decisive. The Court held that the arbitrary exclusion of this relevant and "vital" testimony violated Washington's sixth amendment rights.

■ In each of these cases, the evidence was highly exculpatory: third party confessions, if believed, would *necessarily* exonerate the defendant of the primary offense. In each case, also, the evidence was crucial to the defense; no other avenues were available to prove the defendant's story. From these precedents, the district court in this case concluded that only the exclusion of evidence that is both exculpatory and crucial can violate due process. 520 F.Supp. at 558. Although the district court may have assessed correctly the weight required to overcome the state's interest in this case, the "crucial and exculpatory" test will not be proper in all circumstances. Where the state interest is strong, only the exclusion of critical, reliable and highly probative evidence will violate due process. When the state interest is weaker, less significant evidence is protected.

■ Thus, both the defendant and the state have important and legitimate interests; both must be evaluated and weighed.[3] The exclusion of significant defense evidence implicates constitutional values. When due process issues are presented, the court must balance the importance of the evidence against the state interest in exclusion. In evaluating the significance of the evidence, the court should consider all of the circumstances: its probative value on

---

**3.** *See* Clinton, The Right to Present a Defense: An Emergent Constitutional Guarantee in Criminal Trials, 9 Ind.L.Rev. 711, 797–99 (1976).

the central issue, its reliability, whether it is capable of evaluation by the finder of fact, whether it is the sole evidence on the issue or merely cumulative, and whether it constitutes a major part of the attempted defense. The weight of the state's interest likewise depends upon many factors. The Court must determine the purpose of the rule, its importance, how well the rule implements this purpose, and how well the purpose applies in the case at hand. The court must give due weight to the substantial state interest in preserving orderly trials, in judicial efficiency, in excluding unreliable or prejudicial evidence.

Due process draws a boundary beyond which state rules cannot stray; it does not displace the law of evidence with a constitutional balancing test. State rules are designed not to frustrate justice, but to promote it. Our common rules of evidence—testimonial privileges, the hearsay rule—have been justified by long experience. *Chambers,* 410 U.S. at 298, 93 S.Ct. at 1047; *Washington,* 388 U.S. at 24, 87 S.Ct. at 1926 (Harlan, J., concurring). The state interests which they embody have already been weighed and found to be compelling; only the most urgent considerations, such as those in *Chambers,* can outweigh them. A defendant must show that his interest clearly outweighs the state's before we will interfere with routine procedural matters. *Accord Britton v. Rogers,* 631 F.2d 572, 580 (8th Cir.1980), *cert. denied,* 451 U.S. 939, 101 S.Ct. 2021, 68 L.Ed.2d 327 (1981). Thus, a separate consideration of due process will rarely be needed in day-to-day application of the rules of evidence. Particularly crucial and reliable evidence, such as the excluded confession of *Chambers,* will serve as a warning flag to trial judges to weigh the fairness of their decision. Evidence of little importance, whether merely cumulative or of little probative value, will almost never outweigh the state interest in efficient judicial process.

## II.

We consider now the application of the balancing test to the facts at hand. We are faced with a California ruling which excluded evidence of possible relevance. *See* 1 J. Wigmore, Evidence § 139 (3d ed. 1940). The *Mendez-Arline* rule is not a common rule of evidentiary law, but seems peculiar to California. It has been criticized by California judges. *See People v. Perry,* 104 Cal.App.3d 268, 163 Cal.Rptr. 522 (1980) (Poche, J., dissenting). Like the district judge, we do not doubt that in some situations application of the *Mendez-Arline* rule would violate the Constitution. We deal only with its constitutionality as applied in this case. *See Chambers,* 410 U.S. at 302–03, 93 S.Ct. at 1049–50.

The state's interest in application of its rule in this case, while not compelling, was significant. The asserted rationale of the *Mendez-Arline* rule is "to place reasonable limits on the trial of collateral issues . . . and to avoid undue prejudice to the People from unsupported jury speculation as to the guilt of other suspects." *People v. Green,* 27 Cal.3d at 22, 609 P.2d at 480, 164 Cal.Rptr. at 13 (citation omitted). The possibility of undue diversion of the trial by injection of a collateral issue existed in this case. While defense counsel urged that his presentation would require no more than 45 minutes of the court's time, the introduction of evidence of Wolfe's crimes quite possibly might require rebuttal or, at the most extreme, a full-scale defense of Wolfe by the prosecution. We do not suggest that the state's interest in avoiding such a diversion can never be outweighed, but we do view it as a significant factor in the balance.

The second state interest—the avoidance of unsupported jury speculation as to the guilt of other suspects—is related to the first one. The danger of unsupported jury speculation follows from the injection of collateral issues into the trial. The jury is the proper body to weigh conflicting inferences of fact, but there clearly is some point at which evidence may be so lacking in probity and so productive of con-

fusion that it may constitutionally be excluded. The state had a legitimate interest here in avoiding confusion of the jury. The strength of that interest, however, depends upon how extraneous the excluded evidence actually was. To make that determination, we must look to the defendant's side of the balance.

■ The connection of the proffered evidence to the defendant's case is tenuous. The testimony concerning Wolfe would show that another black man, of roughly Perry's height and weight, wearing braided hair and somewhat similar clothing was near the scene an hour before and had a history of sexual assaults. The identification of Perry, however, was strong. The victim positively identified Perry only minutes after the attack. Wolfe had no dog. Wolfe lacked the prominent forehead scar that Perry has, and (the trial judge found) does not resemble Perry in facial features. Wolfe was clean shaven, while Perry wore a moustache and chin whiskers. Finally, although both wore blue pants, Wolfe's jeans were not likely to be mistaken for the warm-up pants worn by Perry. The evidence thus possessed only slight probative value on the reliability of the identification.

Perry's case is therefore analogous to *United States v. Brannon,* 616 F.2d 413 (9th Cir.1980). In *Brannon,* the defendant was accused of bank robbery and part of the prosecution's evidence consisted of a photograph taken by the bank's surveillance camera. The defendant offered photographs of another person, claiming a resemblance to the person shown in the bank surveillance photograph. The trial judge excluded the evidence pursuant to Fed.R.Evid. 403, noting that he did not think that the other person looked "anything like" the defendant. *Id.* at 417. We affirmed. We acknowledged that "[a] defendant is entitled to prove his innocence by showing that someone else committed the crime," but nevertheless held that the trial court had not abused its discretion in excluding the photographs. *Id.* at 418.

Perry argues that his evidence still raised a significant question of identity similar to that faced in *Pettijohn v. Hall,* 599 F.2d 476 (1st Cir.1979), *cert. denied,* 444 U.S. 946, 100 S.Ct. 308, 62 L.Ed.2d 316 (1979). The comparison, however, demonstrates the collateral nature of Perry's evidence. Pettijohn was convicted of robbery solely on the basis of the victim's identification of him. Pettijohn sought to introduce the testimony of Griffin, the only other witness to the crime. Griffin had seen the robber from about forty feet, and was acquainted with Pettijohn. Nevertheless, when asked to pick the robber out of a set of photographs, Griffin initially selected another man than Pettijohn. In response to police suggestions, Griffin later changed his mind, and identified Pettijohn. *Id.* at 478. The prosecution did not call Griffin to testify. The defense then called him to show that someone other than Pettijohn had been identified as the robber. The state court ruled that this evidence was irrelevant as impeachment of the victim's identification, and excluded it. *Id.* at 479. Pettijohn was convicted and then sought habeas corpus on the ground that the exclusion of this evidence violated his sixth amendment right to call witnesses to his own defense.

The First Circuit found that, although possibly irrelevant as impeachment of the victim's identification, Griffin's testimony was "critically relevant" to support Pettijohn's contention of misidentification. *Id.* at 480. The court found the alleged unreliability of the recanted identification an insufficient reason to justify exclusion: "If the Supreme Court cases of *Washington v. Texas, supra,* and *Chambers v. Mississippi, supra,* mean anything, it is that a judge cannot keep important yet possibly unreliable evidence from the jury." *Id.* at 481. The court held that the exclusion violated Pettijohn's constitutional rights.

The differences between Pettijohn's case and Perry's are significant. In *Pettijohn* one of the two witnesses to the crime identified a person other than Pettijohn as the

robber; here, no one has ever identified Wolfe as the assailant. Griffin's testimony would show that a mistaken identification had occurred; the Wolfe testimony would show only that one could possibly have occurred. Perry's case is thus considerably weaker than Pettijohn's.

Perry's case is also distinguishable from *United States v. Crenshaw*, 698 F.2d 1060 (9th Cir.1983). In *Crenshaw* we held that it was error for a trial court to refuse a subpoena for a defense witness who would have testified that he planned the robbery of which defendant was convicted of aiding and abetting. Because the case was submitted to the jury in a posture that permitted the jury to convict the defendant for having planned the robbery, the defendant was entitled to introduce evidence that someone else had done the planning. Perry's case would be as compelling as that in *Crenshaw* if Perry had offered to introduce testimony by Wolfe or an eyewitness that Wolfe had committed the crime with which Perry was charged. Perry, however, had no such evidence to offer. He sought to show that Wolfe had committed other, similar crimes in the same area and that Wolfe arguably resembled Perry in appearance. The trial court, like that in *Brannon v. United States*, 616 F.2d 413, 417–18 (9th Cir.1980), found no such resemblance and excluded the evidence. The evidence offered by Perry did nothing to impugn the strong identification of Perry as the assailant. In light of this record, we cannot characterize the evidence as critical in the constitutional balance.

Perry argues that evaluating the evidence is a task for the jury. Of course, the trial judge was not resolving an issue of credibility of witnesses. The issue was not credibility, but the probity of the evidence compared to its tendency to divert the trial and confuse the jury. Nevertheless, Perry's argument is not without force. At some point, evidence of collateral crimes by others may become so closely connected with the issue at trial, because of the similarity of personal identifying characteristics, or of modus operandi, or because of proximity of time and place, that the evidence could not be kept from the jury. The trial judge would then be obligated to let the jury evaluate the evidence even if the judge would not have found that evidence convincing had he or she been sitting as the trier of fact. We conclude, however, that the evidence offered by Perry was not so closely connected to the issue of his guilt or innocence that its exclusion, based on its lack of probity and its tendency to confuse the jury, violated due process or the right of compulsory process.

In summary, Perry's proffered evidence falls far short of the critical and reliable evidence considered in *Chambers* and *Webb*. It is also less weighty and central than the disputed evidence in *Pettijohn* and *Crenshaw*. While Perry's evidence is not actually irrelevant, it is sufficiently collateral and lacking in probity on the issue of identity that its exclusion did not violate the sixth and fourteenth amendments. California may constitutionally require more cogent evidence than this before opening up collateral issues at trial.

The judgment of the district court is accordingly AFFIRMED.