977 F.2d 591
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Lynnard Arvant SMITH, Petitioner-Appellee,
v.
B.J. BUNNELL, Superintendent, Respondent-Appellant.
 No. 92-55471.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 9, 1992.
 
 Before WIGGINS, KOZINSKI and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 We decide whether Smith's trial was "so infused ... with unfairness as to deny due process of law." Estelle v. McGuire, 112 S.Ct. 475, 484 (1991). Regardless of whether the trial court's actions were proper under state law, the only question we must answer is whether the trial court's actions made the trial fundamentally unfair. See id. at 480 ("federal habeas corpus relief does not lie for errors of state law"). We believe they didn't.
 
 
 3
 Smith was tried for killing Weary. As Weary was dying, he told a policeman that Smith "did it." The trial court let the policeman testify that he thought Weary was sincere when he inculpated Smith. The court also instructed the jury that dying declarations had "a substantial guarantee of trustworthiness." Finally, the court struck other hearsay evidence--a deputy sheriff's testimony that Haney, a passenger in Weary's car, had identified another man as the shooter in a photographic lineup--that tended to exculpate Smith. These three things, Smith asserts, made the trial so unfair that they denied him due process of law.
 
 
 4
 We can't agree. One witness's vouching for another's credibility isn't remarkably reliable, but it is somewhat probative: The jury system itself is based in part on the notion that people can tell from someone's demeanor whether he's telling the truth. See, e.g., Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981) (factfinders should base credibility judgments in part on demeanor evidence). Moreover, such vouching isn't especially pre-judicial. We think most people realize how hard it is to tell that someone's lying, and take witnesses' assurances of others' veracity with a good bit of salt.
 
 
 5
 Likewise, we can't say it's inherently unfair for the judge to have given the challenged jury instruction. Some people believe that dying declarations are particularly trustworthy; part of the reason for a dying declaration hearsay exception is precisely this belief. See, e.g., Fed.R.Evid. 804(b)(2) advisory committee's note ("While the original religious justification for the exception may have lost its conviction for some persons over the years, it can scarcely be doubted that powerful psychological pressures are present."). Others disagree. Where reasonable minds differ about the weight to be attached to a particular kind of evidence, we can't say that instructing the jury one way or the other renders the trial fundamentally unfair.
 
 
 6
 Neither was it unfair for Haney's exculpatory evidence to have been excluded as hearsay. Only in rare cases will a state rule of evidence be displaced by the Due Process Clause. Medina v. California, 112 S.Ct. 2572, 2576 (1992); Perry v. Rushen, 713 F.2d 1447, 1453 (9th Cir.1983), cert. denied, 469 U.S. 838 (1984). This is not one of those cases. Haney's evidence, if believed, would have been very valuable to the defendant. But it was also quintessentially unreliable hearsay, subject to all the dangers that have led the Anglo-American law of evidence to make hearsay inadmissible. See Fed.R.Evid. art. VIII advisory committee's note (identifying dangers of admitting hearsay evidence).
 
 
 7
 Was Haney actually in a position to see the gunman? How well could he remember the event when he made the identification? Was he lying about the identification? With no opportunity to cross-examine Haney, none of these questions could be answered. Smith contends Haney was sitting closer to the shooter than Weary, and therefore could see better, but that's just conjecture: We don't know, for instance, where Haney was looking at the time, or how obstructed his view was. Likewise, Smith argues that Haney must have wanted to see his friend Weary's killer get caught, and thus had a motive to tell the truth. But again that's just speculation: We don't know if Haney had some hidden motive to exculpate Smith and inculpate Cofield (the man Haney identified as the shooter), or if perhaps Haney's desire to see someone pay for Weary's death led him to make a positive identification when in reality he was uncertain. Unlike the excluded evidence in Chambers v. Mississippi, 410 U.S. 284 (1973), which could have been introduced with minimal risk of misleading the jury--the declarant in Chambers was present and available to be cross-examined--out-of-court declarations like Haney's, if allowed, could be extremely misleading. See Galindo v. Ylst, No. 90-56131, slip op. 9409, 9413-14 (9th Cir. Aug. 5, 1992) (rejecting a similar claim because, though the evidence was highly exculpatory, defendant hadn't demonstrated that the out-of-court statement was reliable); see also Tinsley v. Borg, 895 F.2d 520, 530 (9th Cir.1990) (setting forth five-prong test for determining whether exclusion of evidence is unconstitutional; factors relevant to our case are probative value of evidence and reliability), cert. denied, 111 S.Ct. 974 (1991).
 
 
 8
 Finally, we don't believe that the trial court's actions, viewed together, made the trial unfair. The prosecution's case against Smith was a close one. But we review trials for federal constitutional errors, not errors of state law or erroneous findings of fact. We find no such constitutional error here.
 
 REVERSED
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3