979 F.2d 855
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
John SIMS, Petitioner-Appellant,
v.
William OKU, Respondent-Appellee.
 No. 92-15136.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 6, 1992.
Decided Nov. 23, 1992.
 
 Before JAMES R. BROWNING, WILLIAM A. NORRIS and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 James Wilson charged that John Sims robbed him at knife point. At Sims' trial, Wilson claimed that during the ten day period before the robbery Sims approached him on several occasions offering marijuana. According to Wilson, on the day of the robbery he refused one of Sims' solicitations and then asked Sims where the entrance to the zoo was located. Sims allegedly stated that he was heading in that direction and the two men proceeded together towards the zoo. Wilson stated that after they had turned onto a side-street Sims asked for change of a twenty dollar bill. Wilson testified that he knew he had the money necessary to accommodate Sims because he had cashed some traveller's checks earlier in the day at an ABC store in Waikiki after several unsuccessful attempts to do so at the mall. When Wilson took out his wallet, Sims allegedly bumped him against a concrete pillar and took about $117 at knife-point.
 
 
 3
 Sims, on the other hand, testified that on the day of the alleged robbery he was smoking marijuana on the sea wall when Wilson approached him for the purpose of buying cocaine and marijuana. He contends that he and Wilson took a bus to another location where he acquired the drugs, but that Wilson rejected the marijuana because it was less than he wanted. Sims then suggested another source for the marijuana, but told Wilson the price would be higher. According to Sims, Wilson agreed. Sims said that Wilson gave him the money for the marijuana but that when he returned with the drugs Wilson again expressed dissatisfaction over the quantity and demanded all or some of his money back. Sims testified that he refused to return any of Wilson's money and departed. Sims also testified that while he was with Wilson, Wilson obtained the money for the drug purchase by cashing a traveller's check at a hotel gift store after an unsuccessful attempt to do so at the hotel's Jack-in-the-Box.
 
 
 4
 During Sims' cross-examination, the prosecutor said:
 
 
 5
 Isn't it true that the first time you heard about the cashier's check [sic] and everything else is when you sat through, next to your attorney, or sat there as Mr. Wilson testified regarding his background?
 
 Sims responded:
 
 6
 No sir. I told my prior public defender five months ago, Keith Kiuchi, the same thing--I believe he is scheduled to testify. Would you like to call him and testify?--long before I knew James Wilson was coming back.
 
 
 7
 Sims' lawyer sought to call the public defender as a witness. He argued that Mr. Kiuchi's testimony would corroborate Sims's statement about the traveller's check cashing incident and that it would rebut the prosecution's charge of recent fabrication. After a discussion of various Hawaii evidentiary rules, the judge decided that the testimony would be hearsay, that it would be cumulative, and, that it would cause delay because it would be necessary to permit discovery of the public defender's file. Accordingly, he refused to permit the defense to put Mr. Kiuchi on the stand.
 
 
 8
 Sims was convicted of first degree robbery and sentenced to twenty years in prison. On appeal, Sims' conviction was affirmed by the Hawaii Supreme Court. Ultimately, the district court denied Sims's federal habeas corpus petition on the merits, and this timely appeal followed. The parties are in agreement that we may now review that decision on the merits.
 
 
 9
 Federal courts may not reverse a state conviction on the ground that the trial judge made an improper evidentiary ruling. Estelle v. McGuire, 112 S.Ct. 475, 582 (1991). We may only consider whether the petitioner's conviction violated constitutional norms. Jammal v. Van De Kamp, 926 F.2d 918, 919 (9th Cir.1991). To determine whether the exclusion of particular evidence reaches constitutional proportions we consider: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constituted a major part of the attempted defense. Tinsley v. Borg, 895 F.2d 520, 530 (9th Cir.1990) (citing Perry v. Rushen, 713 F.2d 1447, 1452-3 (9th Cir.1983), cert. denied, 469 U.S. 838 (1984)), cert. denied, 111 S.Ct. 974 (1991). We then balance the importance of the excluded evidence against the strength of the state's interest in its exclusion, taking into account: (1) the purpose of the rule; (2) its importance; (3) how well the rule implements this purpose; (4) how well the purpose applies in the case at hand. Perry, 713 F.2d at 1453. Due weight must be given to the substantial state interest in preserving orderly trials, in judicial efficiency, in excluding unreliable or prejudicial evidence. Id.
 
 
 10
 "Few rights are more fundamental than that of an accused [person] to present witnesses in his own defense." Chambers v. Mississippi, 410 U.S. 284, 302 (1973). Sims contends that under the circumstances the exclusion of the public defender's testimony amounted to a denial of his Sixth Amendment right to obtain witnesses in his favor and to due process of law. Sims argues that the excluded evidence was "highly probative" of the central issue at his trial, which he submits was credibility. He contends that in this case the only real question was whether the jury would believe his testimony or Wilson's. There was, in fact, no probative evidence other than the testimony of the two adversaries. Sims reasons that if the public defender's testimony had been admitted, his story would have been confirmed in general, and it would have been clear to the jury that his statements regarding Wilson's cashing of the traveller's check had not been recently fabricated. He also contends that the public defender's testimony would have called into question both Wilson's statement that he was alone when the checks were cashed and, ultimately, Wilson's entire story. Moreover, Sims argues that the failure to allow the public defender to testify left the jury with the impression that he was lying about what the public defender would have said.
 
 
 11
 We agree that the jury's decision as to Sims' guilt or innocence depended entirely upon whom the jurors believed--Sims or Wilson. There was no physical evidence or other corroboration to support Wilson's account of the events. If the jury believed Sims, he would go free; if it believed Wilson, Sims would be convicted. The prosecutor's attack struck directly at Sims's credibility; the public defender's testimony would have undone the damage. Moreover, the public defender's testimony (as evidenced by the affidavit he submitted) would have supported Sims' contention that Sims was with Wilson when the latter cashed a traveller's check. Because credibility was so central and the excluded evidence so probative of Sims' credibility, the first factor weighs strongly in Sims' favor.
 
 
 12
 Sims' contentions that the public defender's testimony would have been reliable as well as capable of evaluation by the trier of fact are undeniable. Likewise, Sims is accurate in his assertion that the public defender's testimony would not have been cumulative. Sims argues persuasively that, as to the issue of whether he patterned the traveller's check story on Wilson's in-court testimony, Kiuchi's evidence would not have merely repeated Sims' trial testimony but would have corroborated Sims' assertion that he had known about the checks five months prior to trial. See United States v. Parry, 649 F.2d 292, 294-96 (5th Cir.Unit B June 29, 1981).
 
 
 13
 The final factor, whether the evidence constituted a major part of the defense, overlaps the first to an extent. Sims' defense was that there was no robbery but, instead, a narcotics transaction that displeased Wilson. The success of that defense depended upon whom the jury found to be more credible, Wilson or Sims. The effect of excluding the public defender's testimony was to deny Sims the central thrust of his defense, proof of his credibility. The fifth factor militates in favor of a finding of constitutional error.
 
 
 14
 The Perry v. Rushen test arose in the context of whether a particular evidentiary rule, properly applied, violated the defendant's federal constitutional rights. We need not decide whether where, as here, there is no question regarding the constitutionality of the state rule itself but instead a contention that a judge applied it in inappropriate circumstances, a Perry v. Rushen analysis of the purpose, importance, and efficacy of the rule is relevant. Sims' need for the evidence outweighs whatever state interests might exist in the exclusion of the evidence.
 
 
 15
 Where the state interest is strong, only the exclusion of critical, reliable, and highly probative evidence will violate due process. Perry, 713 F.2d at 1452. When the state interest is weaker, less significant evidence is protected. Id. Here, the state's interest was very weak. There were three rationales advanced for the decision to exclude the testimony: 1) Haw.R.Evid. 613(c)(2); 2) the hearsay rule; and, 3) Rule 403. Here, the fundamental purposes of Rule 613(c)(2), the recent fabrication provision, were not directly at stake. The reason for the rule is that after a crime is committed defendants have an incentive to concoct a story that will support their claim of innocence. Here, however, the prosecutor's charge was that Sims had created the traveller's check part of his story after listening to Wilson's trial testimony. While a defendant's post-crime explanations may generally be suspect, when Sims told the public defender of the traveller's check incident five months before trial, he could not have done so as a result of hearing Wilson's trial testimony. Thus, the purposes of the rule bear only a tenuous connection to the facts at issue in this case.
 
 
 16
 Similarly, because the statements were not offered for the truth of the matter asserted, the policies underlying the hearsay rule are of little force here. Likewise, given that it would have taken only a few minutes to have conducted the necessary discovery of the public defender's file, the state's interests in preventing delay were minimal in this case. Thus, the interests of the state do not overcome the Sims' strong need for Mr. Kiuchi's testimony.
 
 
 17
 We conclude that Sims' Sixth Amendment right to present witnesses in his own defense was violated and that he was denied his right to a fair trial. Even a constitutional error will not require reversal if the government shows beyond a reasonable doubt that the error was harmless. Chapman v. California, 386 U.S. 18, 24 (1967). The government has not argued, let alone proved, that the exclusion of the public defender's testimony was harmless beyond a reasonable doubt. Therefore, Sims' conviction cannot stand. The district court's judgment must be reversed and the matter remanded for the issuance of a writ.
 
 REVERSED AND REMANDED
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3