Filed 9/22/20  P. v. Perdomo CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G057487 |
| v. | (Super. Ct. No. 18WF2082) |
| DENNY PERDOMO, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Richard M. King, Judge.  Affirmed, as modified.

Kevin J. Lindsley, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Robin Urbanski and Meredith S. White, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted appellant Denny Perdomo of resisting and deterring an executive officer (Penal Code, § 69; count 1),[1] and misdemeanor vandalism. (§ 594, subd. (a) & (b)(2)(A).) The trial court sentenced Perdomo to serve three years in county jail and ordered him to pay a $40 court operations assessment fee (§ 1465.8), a $30 criminal conviction assessment fee (Gov. Code, § 70373), and a $300 restitution fine. (§ 1202.4, subd. (b).)

Perdomo raises three issues on appeal. First, he requests us to review the in camera proceedings on his motion to discover the arresting officers' personnel information, commonly referred to as a *Pitchess* motion. (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).) After independently reviewing the sealed hearing transcripts and briefs, we conclude the trial court did not err when it reviewed the personnel files and found they contained no discoverable material.

Second, Perdomo contends the trial court abused its discretion and violated his constitutional right to present a defense when it granted the prosecution's motion in limine to exclude questioning about the arresting officers' departmental use of force policy. We conclude the court did not abuse its discretion or transgress any constitutional boundaries in excluding the evidence.

Finally, Perdomo contends the trial court's imposition of assessment fees and the restitution fine violated his rights to due process. The Attorney General concedes we should strike the two assessment fees, but asserts the court correctly imposed the restitution fine. We accept the Attorney General's concession and also agree the court did not err in imposing the restitution fine. Accordingly, we affirm the judgment as modified.

---

[1]     All further undesignated statutory references are to the Penal Code.

# I

## FACTS AND PROCEDURAL HISTORY[2]

### A. *Perdomo's Arrest*

In September 2018, Perdomo knocked on the front door of his neighbor, Alejandro A., and asked questions about Alejandro's brother. Alejandro had never met Perdomo so he declined to answer any questions. Perdomo then spoke in a threatening manner, walked to the back of the residence, and broke Alejandro's security cameras. Alejandro called the police for assistance.

Costa Mesa Police Officers Luu and Montgomery arrived at the residence and saw Perdomo arguing with Alejandro and two other individuals. Perdomo was handcuffed and told to sit on the curb. Perdomo did not resist being handcuffed and initially complied with the officers' instructions when they told him he was not under arrest, but merely detained. But Perdomo soon resumed acting aggressively toward Alejandro and did not obey the officers' instructions to stop. When Perdomo attempted to push past the officers and free himself from their grasp, the officers attempted a "leg sweep" and "figure four lock" to try and maintain physical control of him. On the ground, Officer Montgomery placed pressure on Perdomo's head and face and placed his knee on Perdomo's back. In front of his residence, Alejandro and two other witnesses observed Perdomo kick towards the officers while handcuffed.

As Perdomo continued to physically struggle with the arresting officers, a leg restraining device known as a "hobble" was applied to Perdomo's legs—at times placed above his knees and other times put around his ankles. Perdomo refused to get in the patrol car, placing a foot on the door jamb and kicking Officer Montgomery with his other foot. Officer Montgomery and other officers also struggled with Perdomo at the

---

[2]     Because Perdomo does not challenge the evidentiary basis for his convictions, we briefly summarize the facts in the light most favorable to the judgment.

3

police station, and later at another vehicle while at the Orange County jail. During the struggle, Perdomo kicked and thrashed his legs at the officers, and at one point Perdomo used his head to strike Officer Montgomery's face. None of the officers were injured and Perdomo sustained "scrapes and abrasions on his face, knees and elbows."

The jury convicted Perdomo of resisting a police officer and vandalism. The trial court imposed the upper term of three years on the resisting charge, with two years in custody and one year of mandatory supervision. The court imposed a consecutive one-year term on the vandalism count. The court also imposed assessment fees of $40 and $30 (§ 1465.8; Gov. Code, § 70373) and a restitution fine of $300 (§ 1202.4).

## II

### DISCUSSION

#### A. *Pitchess Motion*

Perdomo filed a pretrial *Pitchess* motion to discover information in the arresting officers' personnel files relating to the use of excessive force, lack of credibility, or any other exculpatory material. The trial court found good cause to hold an in camera review. After reviewing the officers' personnel files, the court concluded they contained no discoverable material.

Perdomo requests that we review the in camera proceedings on his *Pitchess* motion. We review a trial court's in camera review of personnel records for an abuse of discretion. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228.) After independently reviewing the sealed hearing transcripts and the confidential personnel records, we find no abuse of discretion in denying the *Pitchess* motion. The trial court's ruling provides no basis to overturn Perdomo's convictions.

4

*B. The Trial Court Did Not Err in Excluding Evidence of the Police Department's Use of Force Policy*

Perdomo contends the trial court violated his due process right to present a defense when it excluded evidence of "police department practices and procedures regarding use of force." We do not find the contention persuasive. The court's evidentiary ruling on a marginal point did not prevent Perdomo from presenting his defense. Perdomo also fails to show the court abused its discretion when it concluded cross-examination on the use of force policy had only slight probative value and outweighed by the probability it would confuse the issues and mislead the jury.

1. Procedural Background

The issue surfaced when the prosecutor sought a pretrial ruling that would preclude the defense from questioning the arresting officers about the Costa Mesa Police Department's policy on the use of force. The trial court tentatively granted the prosecutor's motion, but told the parties it would revisit the issue and hear further argument during the trial.

The trial court raised the issue again during Perdomo's cross-examination of Officer Montgomery. After excusing the jury, the court asked Perdomo's counsel if she still wanted to ask the officer about the use of force policy. Perdomo's counsel replied, "Not the use of force policy per se." Counsel asserted there were other factors "in their policy . . . that they direct officers to consider, one of those factors being the seriousness of the incident." Counsel argued other factors in the policy "would be appropriate for cross-examination," but she did not specifically identify them.

After pointing out that defense counsel had possession of the police department's use of force policy, the court asked counsel "what aspect of what [Montgomery] has testified to violated the department policy?" When Perdomo's attorney conceded she did not "have anything specific in terms of violating," the court left in place its earlier ruling to exclude questioning about the policy, explaining "unless

5

you can give me something that shows that he violated departmental policy and perhaps he's here to cover that up, I think that could be the argument, I just think that we're going down an area of just slight probative value, and the danger, the danger of confusion and the danger of now the consumption of time . . . I just foresee all these problems that add just little, and I think it adds nothing to the jurors' ultimate call: Was the force reasonable?" The court, citing Evidence Code section 352, concluded that an inquiry into the use of force policy had only slight probative value and posed a substantial risk of confusing the issues and misleading the jury.[3]

2. The Trial Court Did Not Violate Perdomo's Due Process Right to Present a Defense

Perdomo contends the trial court violated his constitutional due process right to present a defense when it excluded questioning on the Costa Mesa Police Department's use of force policy. The contention is entirely without merit.

A state violates a defendant's due process right to present a defense when it establishes evidence rules that arbitrarily exclude material portions of a witness's testimony. (*Rock v. Arkansas* (1987) 483 U.S. 44, 55.) But "'[a]s a general matter, the ordinary rules of evidence do not impermissibly infringe on the accused's [state or federal constitutional] right to present a defense.'" (*People v. Robinson* (2005) 37 Cal.4th 592, 626-627.) "'Although completely excluding evidence of an accused's defense could rise to this level, excluding defense evidence on a minor or subsidiary point does not impair an accused's due process right to present a defense.'" (*People v. Boyette* (2002) 29 Cal.4th 382, 428.) Thus, a due process analysis "will rarely be needed in day-to-day application of the rules of evidence" because it "does not displace the law

---

[3] Evidence Code section 352 grants a trial court the discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of confusing the issues, or of misleading the jury."

of evidence with a constitutional balancing test." (*Perry v. Rushen* (9th Cir. 1983) 713 F.2d 1447, 1453.)

Perdomo claims the trial court utilized Evidence Code section 352 to violate his constitutional right to present a defense by arbitrarily excluding crucial defense evidence he would have elicited on cross-examination of the arresting officer. We must therefore determine whether the court erred under state law in excluding questions about the use of force policy.

Under Evidence Code section 352, "[t]he trial court enjoys broad discretion in determining the relevance of evidence and in assessing whether concerns of undue prejudice, confusion, or consumption of time substantially outweigh the probative value of particular evidence. (*People v. Rodrigues* [1994] 8 Cal.4th [1060,] 1124.) 'The exercise of discretion is not grounds for reversal unless "'the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*People v. Ochoa* (2001) 26 Cal.4th 398, 437-438.)" (*People v. Clark* (2016) 63 Cal.4th 522, 572.)

In evaluating the probative value of the Costa Mesa Police Department's use of force policy, the trial court correctly observed that a section 69 violation requires the prosecution to prove Perdomo resisted the officers "'by the use of force or violence.'" (*People v. Smith* (2013) 57 Cal.4th 232, 241 (*Smith*).) This requires the jury to determine whether the officers' actions were objectively reasonable under the circumstances, without regard to the officer's underlying motivations. (*People v. Brown* (2016) 245 Cal.App.4th 140, 157 (*Brown*).) In addition, the court correctly noted the prosecution also must show "the officer was acting lawfully at the time of the offense." (*Smith*, *supra*, 57 Cal.4th at p. 241.)

The trial court concluded an inquiry into the use of force policy had "slight probative value" only after Perdomo's lawyer conceded she had no questions about the use of force policy "per se," but instead wanted to explore other "appropriate" factors of

7

the policy. We are hard-pressed to see how this was an abuse of discretion, as Perdomo claims. Indeed, Perdomo never claimed the officers used excessive force. He based his defense instead on the claim he did not resist the officers with the requisite force or violence necessary to violate section 69. Perdomo's defense attorney in closing argument conceded that Perdomo obstructed the officers and therefore was guilty only of resisting arrest, a misdemeanor occurring when a defendant resists an officer in the performance of the officer's duties. (§ 148.) Because an officer acts illegally when using excessive force or violence to arrest an individual, Perdomo's concession he violated section 148 implicitly acknowledged the officers lawfully detained and arrested him. The court therefore did not err in concluding an inquiry into the use of force policy offered little if any probative value on whether Perdomo forcefully and violently resisted arrest in violation of section 69.

The trial court also reasonably concluded an exploration into the use of force policy and other factors Perdomo failed to identify posed a substantial risk of confusing the issues and misleading the jury. As the *Brown* court observed, testimony about a police department's training regimen was "potentially distracting and confusing" because the jury must decide whether the officers acted reasonably based on the facts and circumstances of the defendant's encounter with the officers, "not by using the officers' training as a proxy for it." (*Brown, supra*, 245 Cal.App.4th at p. 170; see also *Whren v. United States* (1996) 517 U.S. 806, 815 [because police procedures and enforcement practices "vary from place to place and from time to time," they are an unreliable source in objectively evaluating whether officers acted reasonably under the circumstances].) More to the point, testimony about the use of force policy and police training only could engender confusion about the issues in light of Perdomo's concession the officers did not use excessive force.

Perdomo suggests he would have argued the officers used excessive force had the trial court allowed him to develop this evidence on cross-examination of

8

Montgomery. But during Montgomery's cross-examination Perdomo's attorney conceded she did not intend to ask the officer about the use of force "per se," but instead wanted to explore other factors in police policy, such as whether the officers should have considered the "seriousness of the incident." Counsel did not specifically identify those other factors and conceded the officers did not violate any specific police policy. This hardly supports Perdomo's claim on appeal the trial court's ruling "rendered moot" his excessive force claim.

We also reject Perdomo's contention the trial court's ruling prevented him from questioning the arresting officer about "the methods the officer actually employed, . . . what alternative methods were available." The court's ruling did not preclude Perdomo from asking the officers about alternatives they could have used to avoid a confrontation with Perdomo. Indeed, Perdomo's lawyer asked Montgomery if he had considered walking Perdomo across the street and away from the neighbor. Nothing prevented further inquiry about other alternatives. It is simply incorrect to claim the court prevented cross-examination on alternatives the officers could have used to avoid escalating the confrontation with Perdomo.

Perdomo's reliance on *Smith v. City of Hemet* (9th Cir. 2005) 394 F.3d 689 and *Kopf v. Skyrm* (4th Cir. 1993) 993 F.2d 374 is unavailing. These two federal civil actions dealt with whether the plaintiff could have an expert witness testify about the violation of police policy when using trained police dogs. Perdomo did not offer expert witness testimony and did not assert the officers violated police policy. Moreover, "the scope of relevant subject matter implicating issues of excessive [police] force tends to be broader in civil cases," often involving contested issues such as whether an officer acted in good faith as part of a qualified immunity defense, and agency liability based on excessive use of force per official policy or supervisorial liability under an indifference theory. *Brown, supra*, 245 Cal.App.4th at pp. 171, 172.)

9

In sum, the veteran trial judge correctly analyzed the issues and reached the correct conclusion.  We discern no abuse of discretion.

*C. The Restitution Fine and Court Fees*

Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), Perdomo contends the trial court violated his due process rights by imposing a $40 court operations assessment fee (§ 1465.8), a $30 criminal conviction assessment fee (Govt. Code, § 70373), and a $300 restitution fine.  The Attorney General agrees we should strike both assessment fees, but argues imposition of the restitution fine did not violate Perdomo's due process rights.  We agree with the Attorney General.

*Dueñas* held that due process requires a trial court to determine whether a defendant has the ability to pay assessment fees if the defendant requests the court to hold an ability to pay hearing.  (*Dueñas, supra*, 30 Cal.App.5th at p. 1167.)  Normally, it is the defendant's burden, not the prosecution's, to present evidence showing an inability to pay these assessments.  (*People v. Kopp* (2019) 38 Cal.App.5th 47, 96, review granted Nov. 13, 2019, S257844 (*Kopp*); *People v. McMahan* (1992) 3 Cal.App.4th 740, 749-750.)  However, when Perdomo claimed he lacked the ability "to pay those fees," the prosecution waived its right to a hearing and did not object when the trial court made a factual finding that Perdomo had "no ability to pay the fees [the court] imposed."

Although the trial court found Perdomo had no ability to pay the assessment fees, it did not strike the imposition of those fees.  The Attorney General agrees with Perdomo the fees must be stricken because they are not punitive in nature and therefore it would be a violation of due process to impose fines on those who have no ability to pay them.  Trial courts, however, must consider whether a defendant will earn enough in prison wages or income while on probation.  (*Kopp, supra,* 38 Cal.App.5th at p. 96 ["trial court should not limit itself to considering only whether [defendants] have the ability to pay at the time of the sentencing hearing"].)  We conclude the court followed this admonition because it did not find Perdomo had no *present* ability to pay

10

the fees imposed, but instead found Perdomo had no ability to pay. We interpret this to mean the court concluded Perdomo would not have the ability to pay the fees during his time in custody and on probation. We are in no position to second-guess the court, which was in the best position to evaluate Perdomo's physical and mental capacities for earning future income.

We reach a different conclusion about the restitution fine, however. The record shows Perdomo objected only to the imposition of assessment fees. The *Dueñas* decision became final on February 4, 2019, when the California Supreme Court denied review. Because the trial court sentenced Perdomo on February 15, 2019, Perdomo's failure to challenge the restitution fine forfeits the issue on appeal. (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153-1155.)

Perdomo would fare no better on the merits. Section 1202.4, subdivision (b), requires imposition of a restitution fine between a minimum of $300 to a maximum $10,000, except for "compelling and extraordinary reasons." (§ 1202.4, subd. (b).) "A defendant's inability to pay shall not be considered a compelling and extraordinary reason not to impose a restitution fine." (§ 1202.4, subd. (c).) An inability to pay, however, may be considered if a court imposes *more* than the minimum $300 fine. (§ 1202.4, subd. (d).) A defendant has the burden of showing an inability to pay a restitution fine. (§ 1202.4, subd. (d).)

Perdomo relies on *Dueñas's* holding that due process prohibited the imposition of the minimum $300 restitution fine without first holding an ability to pay hearing. (*Dueñas. supra,* 30 Cal.App.5th at p. 1164.) We disagree with the *Dueñas's* due process analysis. These fines are punitive in nature and therefore must be analyzed under the excessive fines clause of the Eighth Amendment of the federal constitution and article I, section 17 of the California Constitution. As the *Kopp* court observed, "there is no due process requirement that the court hold an ability to pay hearing before imposing

11

a punitive fine and only impose the fine if it determines the defendant can afford to pay it." (*Kopp, supra*, 38 Cal.App.5th at pp. 96-97.)

A punitive forfeiture violates the excessive fines clause only if it is "grossly disproportional to the gravity of a defendant's offense." (*United States v. Bajakajian* (1998) 524 U.S. 321, 334, 339-340 [forfeiture of $357,144 in currency for failure to report leaving the country with more than $10,000 was grossly disproportional].) Here, Perdomo's $300 restitution fine was not "grossly disproportional" to the gravity of his offense. Nor does the minimum fine impact a fundamental liberty interest or result in imprisonment if not paid. (*Bearden v. Georgia* (1983) 461 U.S. 660, 672-673 [court may not imprison probationer for failure to pay fine or restitution solely for defendant's inability to pay].)

### III

#### DISPOSITION

We modify the judgment to strike imposition of a $30 court operations assessment fee and a $30 criminal conviction assessment fee. As modified, the judgment is affirmed. The trial court is directed to amend the abstract of judgment accordingly.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.


12